**AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida Corporation, Plaintiff–Appellant,**

v.

**FIRST STATE INSURANCE COMPANY, a Foreign Corporation, Defendant–Appellee.**

No. 89–5093.

United States Court of Appeals, Eleventh Circuit.

Jan. 11, 1990.

Robert W. Wilkins, Nixon, Hargrave, Devans & Doyle, Jupiter, Fla., Vincent J. Vitkowky and Frank H. Penski, Nixon, Hargrave, Devans & Doyle, New York City, for plaintiff-appellant.

Maurice M. Garcia, Abrams, Anton, Robbins, Resnick & Schneider, Hollywood, Fla., Stephanie A. Ebers and Louis G. Adolfsen, Siff, Rosen, & Parker, New York City, for defendant-appellee.

Before VANCE[*] and COX, Circuit Judges, and EDENFIELD[**], District Judge.

PER CURIAM:

This appeal arises from the district court's dismissal of an action in favor of a pending state proceeding. Because the district court misapplied the applicable law governing dismissal in such cases, we reverse and remand.

## I. BACKGROUND:

### A. Facts

American Bankers Insurance Company of Florida (American) and First State Insurance Company (First State) issued separate liability insurance policies to the same company—Arlen Realty and Development Corporation (Arlen).[1] American issued a general liability policy to Arlen covering certain claims up to specified limits of liability. First State issued an excess liability policy to Arlen covering claims for amounts that exceeded the limits of liability of the American policy. First State's obligations under its policy came into effect when American reached its limits of liability.

American made numerous payments on behalf of Arlen under the American policy and, by mistake, continued to make payments after it had reached its limits of liability. American paid over $764,000 beyond the limits of its liability. These payments included payments to third parties for their claims against Arlen, payments of judgments in lawsuits filed against Arlen, and payments to local defense counsel representing Arlen in such suits. American claims that had it not paid the $764,000 in claims against Arlen, First State would have been liable for such payments.

In June 1988, American sued First State in Florida state court seeking reimbursement of the $764,000 through a claim of equitable subrogation. American learned after commencement of the action in Florida state court that First State had sued Arlen in New York state court in April of 1988. In the New York action, First State seeks a declaratory judgment that it is not obligated under its policy with Arlen to defend or provide indemnity for various claims for personal injuries against the insured which occurred during the period from May 1977 to March 1978. First State contends that it is not obligated to provide coverage because of Arlen's breach of its obligation to give timely notice of claims covered by the First State policy. The claims which First State is contesting in New York include those claims which American mistakenly paid on Arlen's behalf.

In July 1988, First State removed the Florida state court action to the United States District Court for the Southern District of Florida. First State then moved to dismiss or, in the alternative, stay this action on the ground that, among other things, a parallel state court action was pending in New York. Shortly thereafter, First State joined American as a party in the New York action.

In October 1988, American amended its complaint in this action to assert equitable

[*] This opinion was concurred in by Honorable Robert S. Vance prior to his death on December 16, 1989.

[**] Honorable B. Avant Edenfield, U.S. District Judge for the Southern District of Georgia, sitting by designation.

1. The insured actually consists of Arlen Realty and Development Corporation and various of its affiliates and subsidiaries. The corporate structure of Arlen has been altered through subsequent mergers and acquisitions since American and First State issued their respective policies to Arlen.

causes of action in restitution, unjust enrichment and indemnity, as well as subrogation. American also opposed First State's motion to dismiss, asserting that no "exceptional circumstances" existed which would permit the district court to relinquish its jurisdiction under the factors the Supreme Court defined in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). American further asserted that its claims against First State in the instant action were completely distinct and separate from First State's claims against Arlen in the New York action. Therefore, American argued that the district court should retain jurisdiction.

### B. The District Court Order

The district court granted First State's motion to dismiss this action. It concluded that this federal action and the New York action dealt with the same factual and legal issues—whether First State was liable to Arlen and derivatively to American for defense and indemnification of certain insurance claims. The district court reasoned that First State's defense of untimely notice by Arlen was equally applicable to American's claim against First State. Therefore, to permit this action to continue would lead to piecemeal litigation.

The district court also stated that the New York forum was more convenient because most of the discovery would take place in New York. Moreover, the court found that New York law would provide the rule of decision.

The district court further noted that since an answer had been filed by Arlen in the New York action, and no answer had been filed in the instant matter, more progress had been made in New York. On the basis of these findings, the district court dismissed this action, without prejudice, to permit refiling by American if its interests were not protected in the New York action.

### II. DISCUSSION:

We review the district court's dismissal of this action for an abuse of discretion.

*Noonan South Inc. v. County of Volusia*, 841 F.2d 380, 383 (11th Cir.1988). Upon review of the record and the applicable law, we conclude that the district court abused its discretion in granting First State's motion to dismiss.

This case involves the dismissal of a federal action in deference to a pending state court action; as such it is governed by the principles articulated in *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Colorado River* the Supreme Court announced that a federal court may dismiss an action because of parallel state court litigation only under "exceptional" circumstances. 424 U.S. at 818, 96 S.Ct. at 1246. Indeed, "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247. The Court set out four factors to be considered in determining whether dismissal on the grounds of exceptional circumstances is appropriate: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. *Id.* at 818, 96 S.Ct. at 1246–1247. In *Moses H. Cone*, the Court reaffirmed its view that only exceptional circumstances will warrant dismissal of federal cases in favor of a concurrent state suit. 460 U.S. at 14, 103 S.Ct. at 936. The *Moses H. Cone* decision also repeated the four *Colorado River* factors and added two more: (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties' rights. *Moses H. Cone*, 460 U.S. at 23, 26, 103 S.Ct. at 941, 942; *Noonan South*, 841 F.2d at 381. The test for determining when exceptional circumstances exist, therefore, involves the careful balancing of six factors. The weight to be given any one factor may vary greatly depending on the case; however, the balance is "heavily weighted" in favor of the federal court exercising jurisdiction. *Id.* at 16, 103 S.Ct. at 937.

Our task is to determine if the district court properly applied the exceptional circumstances test set forth in *Moses H. Cone*. We conclude that the district court balanced the *Moses H. Cone* factors without sufficient regard for the presumption in favor of the federal court retaining jurisdiction. Stated otherwise, no one factor or combination of factors in this case gives rise to exceptional circumstances warranting dismissal of federal jurisdiction.

■ At the threshold, it is important to dispose of an issue which both parties briefed extensively but nonetheless is collateral to this appeal. In reaching its ultimate conclusion that this action should be dismissed in favor of the New York state action, the district court determined that New York law governs American's claims. American argues that the district court exceeded the scope of the *Moses H. Cone* inquiry when it decided which state law applies, and even if the choice of state law is a proper consideration, it is Florida law, not New York law, that provides the rule of decision. We agree with American that which state's laws control American's claims is not a proper consideration for determining the appropriateness of dismissal under the *Moses H. Cone* decision. Since our review is limited to the propriety of dismissal, and the choice of law question does not bear on that inquiry, we need not decide which state's laws control.

■ We now turn to the required analysis. The first factor is inapplicable because neither the federal court nor the New York state court has assumed jurisdiction over any property. The second factor, that is, the inconvenience of the federal forum is, in First State's estimation, the most important factor advising dismissal. In our view, however, the federal court is only marginally less convenient to the parties than the state court. The inconvenience factor focuses primarily on the "physical proximity of the federal forum to the evidence and witnesses." *Evanston Insurance Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir.1988). Although two of the largest claims for which American seeks reimbursement arose in New York, the other claims arose in seven different states. Some of the witnesses and documents are in New York, but American's records indicating payment of the claims and the people who authorized such payments are in Florida. While New York may be slightly more convenient, the "inconvenience of the federal forum is not so great" that this factor points toward dismissal. *Id.* at 1192.

The third factor focuses on avoiding piecemeal litigation. First State's defense against American in this action is the same as its defense in New York state court against any claim by Arlen for insurance coverage arising from accidents that occurred during the May 1977 to March 1978 policy period—that is, Arlen did not comply with the timely notice provisions in the policy so it is not entitled to coverage. For the same reason—untimely notice—First State asserts that American is not entitled to reimbursement. Because First State joined American in its suit in New York against Arlen, this action, if allowed to proceed, may result in some piecemeal litigation. We believe, however, that the underlying disputes are different; one involves reimbursement of money already paid by American whereas the other involves claims by Arlen for coverage or defense. American's equitable claims of restitution, unjust enrichment, indemnity and subrogation may be decided completely independent of First State's contract action against Arlen. Thus, if this factor weighs in favor of dismissal it does so only slightly.

The order in which jurisdiction was obtained by the concurrent forums is the fourth factor. This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940. No significant progress has been made in either action. There has been no discovery, and no substantive motions have been filed in either action. The fact that Arlen has answered in the New York action while First State had not answered in this federal action counts little in measuring progress in litigation. This

factor, therefore, does not weigh in favor of dismissal.

The parties hotly dispute whether Florida or New York law controls American's claims; however, the question for dismissal purposes is not which state law applies, but rather whether federal or state law applies. There is no federal issue in this case, but this does not counsel in favor of dismissal. As the *Moses H. Cone* Court emphasized, "our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the federal court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' ... to justify the surrender of jurisdiction." 460 U.S. at 25–26, 103 S.Ct. at 942. Only in "rare circumstances" will the presence of a state law issue weigh in favor of dismissal. *Id.* This action does not present such rare circumstances; it does not involve complex questions of state law that would best be resolved by a state court, *see Noonan South*, 841 F.2d at 382. Thus, this factor does not point toward dismissal.

In regard to the sixth factor, First State argues that American's rights will be adequately protected in New York state court and, therefore, the district court appropriately dismissed the federal case. We disagree. The "fact that both forums are adequate to protect the parties' rights merely renders this factor neutral on the question of whether the federal action should be dismissed." *Id.* at 383. That American's rights are protected in state court does not deprive it of its right to the federal forum.

## III. CONCLUSION:

Having balanced the six *Moses H. Cone* factors, we conclude that no exceptional circumstances require dismissal of this case in deference to the pending state court proceeding. If it were simply a question of judicial economy, this litigation probably should proceed in the New York court. A federal court cannot properly decline to exercise its statutory jurisdiction, however, simply because judicial economy might be served by deferring to a state court. Fed-eral courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River*, 424 U.S. at 816, 96 S.Ct. at 1246. The interest in preserving federal jurisdiction mandates that this action not be dismissed.

We REVERSE the district court judgment dismissing the action and REMAND for further proceedings.