**VILLA MARINA YACHT SALES, INC., et al., Plaintiffs, Appellants,**

v.

**HATTERAS YACHTS, et al., Defendants, Appellees.**

**No. 90–1206.**

United States Court of Appeals, First Circuit.

Heard June 6, 1990.

Decided Sept. 20, 1990.

---

Michael J. Rovell with whom J. Cunyon Gordon, Jenner & Block, Gerardo A. Carlos, Carlos & Troncoso, Carlos Latimer, Ramirez, Latimer & Biaggi, were on brief, for plaintiffs, appellants.

Rossell Barrios–Amy with whom Samuel T. Cespedes, Ana Matilde Nin, McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, were on brief, for defendants, appellees.

Before BREYER, Chief Judge, CAMPBELL, Circuit Judge, and COFFIN, Senior Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellants challenge the district court's decision to dismiss this case under the abstention-like doctrine established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), which permits federal courts to decline jurisdiction in favor of parallel state litigation for reasons of "wise judicial administration," *id.* at 818, 96 S.Ct. at 1246. Appellants claim further error in the court's decision to dismiss one defendant based on lack of personal jurisdiction. We reverse the personal jurisdiction ruling, but conclude that the *Colorado River* issue must be remanded for further consideration. This is necessary because, insofar as the district court's recorded reasoning reveals its analysis, the court neglected, in exercising its discretion, to give due weight to the heavy presumption in favor of retaining jurisdiction.

## I. Background

This case arises out of a dealership agreement between Hatteras International, a manufacturer of luxury boats, and Villa Marina Yacht Sales, Inc.,[1] Hatteras' longtime exclusive dealer in Puerto Rico and

---

1. Two affiliated companies, Villa Marina Yacht Harbor, Inc., and San Juan Bay Marina, Inc., also were joined as plaintiffs in this case. For the sake of convenience, we shall refer to them collectively as Villa Marina throughout this opinion.

the Caribbean. In September 1988, Hatteras notified Villa Marina by letter that Hatteras was terminating the relationship because of concerns about Villa Marina's business ethics and sales performance.

Through correspondence, Villa Marina strongly objected to the termination and contested the bases for the decision. Nevertheless, in November, Hatteras executed a dealership agreement with Hatteras Yacht Sales of Puerto Rico, Inc. ("Yacht Sales"), naming it Hatteras' new exclusive dealer in Puerto Rico. Yacht Sales is owned by Pedro Rivera Fullana, who left his position as sales manager at Villa Marina to open the new distributorship.

Three different lawsuits followed shortly after these events. On January 9, 1989, Hatteras filed the first action against Villa Marina in Puerto Rico Superior Court. The company sought a declaratory judgment that Commonwealth law permitted termination of the Villa Marina dealership agreement, and injunctive relief barring Villa Marina and its agents from interfering with the sale of Hatteras products by Yacht Sales. On February 7, Villa Marina answered and counterclaimed for damages under the Puerto Rico Dealer's Act, known as Law 75, P.R.Laws Ann. tit. 10, § 278 (1978), which prohibits a manufacturer from terminating a dealer's contract in the absence of "just cause."

Three days later, Villa Marina and its president, Eduardo Ferrer Bolivar, filed a *separate* action in the local court against Yacht Sales, Yacht Sales' president (Rivera), and the president of Hatteras International, Herbert Pocklington, alleging tortious interference with the dealership agreement between Hatteras and Villa Marina, and damage to reputation. On May 19, however, Villa Marina moved for dismissal without prejudice of the claims against Pocklington, apparently in preparation for the third lawsuit, which it filed a few days later in federal court against

Pocklington, Hatteras Yacht, Hatteras International and Hatteras' parent corporation, Genmar Industries, Inc.[2] This suit alleges violations of Law 75, breach of contract, tortious interference with prospective business advantage and tortious interference with contracts.

Defendants subsequently moved to dismiss the federal case against Pocklington based on a lack of personal jurisdiction, and later filed a motion to dismiss or stay under the *Colorado River* doctrine in light of the "substantially similar[ ]" action pending in the Commonwealth court. The district court granted both motions, and ordered that the case be dismissed. On appeal, Villa Marina argues that the court erroneously found that it lacked personal jurisdiction over Pocklington and failed to apply the appropriate standard in considering whether to dismiss the case under *Colorado River.* We shall discuss each of these issues in turn.

## II. *Personal Jurisdiction*

Villa Marina alleged in its federal complaint that Herbert Pocklington, president of Hatteras International, deliberately made false statements to Hatteras and another yacht manufacturer for the purpose of, and with the result of, inducing the companies to breach their contracts with Villa Marina. The complaint specifically alleges that Pocklington provided Hatteras with false information concerning Villa Marina's finances, told Hatteras that Villa Marina "had either committed crimes or acted unethically," and made false statements to Bertram–Trojan, Inc. ("Bertram"), the other yacht manufacturer, about Hatteras' reasons for terminating Villa Marina as its dealer. Pocklington's actions, according to the complaint, constituted tortious interference with contracts and tortious interference with prospective business advantage.

In a sworn statement attached to his motion to dismiss,[3] Pocklington admitted

---

**2.** Hatteras Yacht and Hatteras International are both unincorporated divisions of Genmar Industries. Villa Marina's contract was with Hatteras International, and references to "Hatteras"

throughout this opinion generally refer to that company.

**3.** In addition to seeking dismissal based on lack of personal jurisdiction, this motion sought to

that, as the Hatteras officer in charge of the distribution and marketing of Hatteras products in Puerto Rico, he had executed the dealership agreement between Hatteras and Villa Marina and later signed the letter terminating Villa Marina as a Hatteras dealer. He further acknowledged that he had executed the dealership agreement with Yacht Sales, the dealership that replaced Villa Marina as Hatteras' representative in Puerto Rico. Pocklington stated that he traveled to Puerto Rico in his corporate capacity "to discuss and take measures with respect to the distribution and service of Hatteras products in Puerto Rico." He denied, however, that he had committed any tortious acts in Puerto Rico, asserting that he had never acted with malice or bad faith toward Villa Marina, or made any false statements to Hatteras or Bertram about Villa Marina.

The district court held that personal jurisdiction over Pocklington had not been accomplished because Villa Marina failed to rebut Pocklington's sworn statements that he had not made false statements or committed tortious acts in Puerto Rico. The court relied on *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906, 907 (1st Cir.1980), in which we held that jurisdiction over a corporate officer may not be based merely on jurisdiction over the corporation but must rest on a "showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." Six of the seven individual defendants in *Escude Cruz* filed unrebutted affidavits denying any involvement with the subsidiary corporation in Puerto Rico for which the plaintiff worked.

The district court erred in two respects in relying on *Escude Cruz.* First, this is not a case in which a plaintiff seeks to establish jurisdiction over a corporate officer based solely on his corporate status. Pocklington admits that he played a direct role in the "distribution and service of Hatteras products in Puerto Rico," and Villa Marina's complaint points to specific actions by Pocklington that caused it financial harm.[4] This is in direct contrast to *Escude Cruz,* where neither the complaint nor the defendants' affidavits showed any link between the defendants—officers and directors of a New Jersey corporation—and the Puerto Rico company that employed the plaintiff.[5] *Cf. Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 617 (1st Cir. 1988) (no personal jurisdiction where parent company and corporate officers had no involvement in decisions of Puerto Rican subsidiary).

Second, the district court erroneously believed that plaintiff's failure to rebut Pocklington's affidavit was equivalent to the failure of the plaintiff in *Escude Cruz* to counter the affidavits filed by the defendants there. In *Escude Cruz,* the plaintiff failed to rebut the defendants' assertions that they were uninvolved with the subsidiary company and therefore had no connection with Puerto Rico. In this case, however, Pocklington admitted in his affidavit that he had substantial involvement with Hatteras' operations in Puerto Rico. Indeed, Pocklington confirmed plaintiff's claim that he played a prominent role in deciding Villa Marina's fate. Moreover, Pocklington did not deny making statements about Villa Marina to Hatteras and Bertram, but denied only that he had made *false* statements.

quash service on the defendants based on improper procedures. The district court concluded that service was made properly, and defendants have not appealed that ruling.

4. We reject defendants' contention that Villa Marina offered only conclusory allegations against Pocklington. The allegations of false statements made to Hatteras and Bertram regarding Villa Marina's finances and business practices are sufficiently specific to be given weight in determining whether Villa Marina has met its burden of showing that jurisdiction ex-

ists. *See Kowalski v. Doherty, Wallace, Pillsbury & Murphy,* 787 F.2d 7, 8 (1st Cir.1986) (where there has been no evidentiary hearing, plaintiff need only make prima facie showing of jurisdiction). This is particularly true when Villa Marina's allegations of jurisdictional facts are construed, as they must be, in Villa Marina's favor. *Id.* at 9.

5. Although one defendant admitted involvement with company operations, the plaintiff failed to allege any specific participation by him in the conduct that caused plaintiff's harm.

Thus, there was no need for Villa Marina to respond to Pocklington's affidavit; personal jurisdiction does not depend upon whether the statements Pocklington made were false and actionable, but only on whether Pocklington took some action that, *if wrongful* (a matter for later proof), could subject him to liability in Puerto Rico. Under Rule 4.7(a)(2) of P.R.Laws Ann. tit. 32, App. III (1984), an individual is subject to suit in Puerto Rico if he "[e]xecutes by himself or through his agent tortious acts within Puerto Rico." Requiring proof of the tortious nature of acts in order to assert jurisdiction would make the jurisdictional determination identical to the merits. To establish jurisdiction, therefore, Villa Marina needed only to assert facts showing that Pocklington committed sufficient acts within Puerto Rico, the tortious nature of which would be the issue on the merits.

The facts alleged in the complaint, taken together with Pocklington's affidavit, clearly establish sufficient action to meet the requirements of Puerto Rico's long-arm statute. We previously have held that Rule 4.7(a)(2) allows jurisdiction "where a defendant who has availed himself of the laws and benefits of Puerto Rico commits a tortious act within or without the Commonwealth that he knows or reasonably should know will cause injury within Puerto Rico." *Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983). As the corporate officer in charge of distribution and marketing of Hatteras' products in Puerto Rico, Pocklington has initiated and maintained substantial contacts with Puerto Rico individuals and businesses, arranging dealerships that presumably benefit himself and Hatteras International. He has visited Puerto Rico for these business pur-

poses, and has influenced, if not controlled, decisions that directly affected Puerto Rico citizens. Villa Marina alleges that Pocklington played a primary role in causing its harm, and Pocklington's affidavit does not dispute that he made the statements described in Villa Marina's complaint.

The complaint and affidavit therefore establish jurisdiction within the reach of Puerto Rico's long arm statute, and it is worth noting that the exercise of jurisdiction in these circumstances falls well within constitutional standards. Pocklington unquestionably "availed himself of the laws and benefits of Puerto Rico and acted in such a manner 'that he could reasonably anticipate being haled into court' in Puerto Rico," *Mangual,* 710 F.2d at 19–20 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). There is no doubt that the "minimum requirements of 'fair play and substantial justice'" were met here, *Dalmau Rodriguez v. Hughes Aircraft Corp.,* 781 F.2d 9, 15 (1st Cir. 1986) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564).[6]

We therefore reverse the district court's dismissal of Pocklington for lack of personal jurisdiction.[7]

### III. *Colorado River Doctrine*

#### A. Legal Principles

The Supreme Court in *Colorado River* established a doctrine governing the stay or dismissal of federal lawsuits in circumstances in which the three traditional categories of abstention were inapplicable. *See*

---

**6.** Defendants contended at oral argument that personal jurisdiction was not established because Villa Marina failed to allege that Pocklington made false statements *in Puerto Rico.* Under *Mangual,* the issue is not where a statement was made but whether it was directed toward, and had an effect within, the relevant location. We similarly held with respect to Massachusetts' long-arm statute in *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661, 664 (1st Cir.1972):

> Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a

resident of that state, he has, for jurisdictional purposes, acted within that state.
*See also Burger King,* 471 U.S. at 476, 105 S.Ct. at 2183 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.").

**7.** We, of course, offer no view as to the substance of Villa Marina's claims against Pocklington.

424 U.S. at 817, 96 S.Ct. at 1246.[8] This alternative basis for declining jurisdiction rested not on "considerations of state-federal comity or on avoidance of constitutional decisions, as does abstention, but on 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."'" *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952))). In recognizing this form of deference, however, the Court took care to emphasize its narrowness. Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, the Court held that the surrender of jurisdiction in favor of parallel state proceedings for reasons of "wise judicial administration" is permissible only in "exceptional" circumstances, *id.* at 818, 96 S.Ct. at 1246.

Thus, while "the general principle [in an overlap between two federal district courts] is to avoid duplicative litigation," *id.* at 817, 96 S.Ct. at 1246, the pendency of an overlapping state court suit is an insufficient basis in and of itself to warrant dismissal of a federal suit. Because "[o]nly the clearest of justifications will warrant dismissal," *id.* at 819, 96 S.Ct. at 1247, the circumstances permitting a district court to dismiss a case under the *Colorado River* doctrine "are considerably more limited than the circumstances appropriate for abstention," *id.* at 818, 96 S.Ct. at 1246.

The Court in *Colorado River* listed four illustrative factors to be considered in determining whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. In *Moses H. Cone*, the Court reaffirmed the exceptional circumstances test and added two additional factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Other courts have articulated additional factors, such as the presence or absence of concurrent jurisdiction and the vexatious or contrived nature of the federal claim, *see, e.g., Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir.1988) (listing 10 factors). *See also Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309–10 (1st Cir.1986) (affirming district court dismissal and expressing displeasure at practice of filing federal action in reaction to adverse ruling in state court).

The weight to be given any single factor may vary greatly depending on the case, and "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required," *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47. To ensure that only exceptional cases are dismissed from federal court, the district court must approach its decision "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

The decision whether to surrender jurisdiction is "necessarily left to the discretion of the district court in the first instance," *Moses H. Cone*, 460 U.S. at 19, 103 S.Ct. at 938, and the district court's decision may be reversed only for an abuse of that discretion. "Yet to say that the district court has discretion is not to say that its decision is unreviewable; such discretion must be exercised under ... *Colorado River*'s exceptional-circumstances

---

8. The three abstention categories discussed by the Supreme Court were: (1) when a federal court can avoid a constitutional determination by allowing a state court to construe state law; (2) when the case involves difficult questions of state law involving significant policy considerations, and (3) when federal jurisdiction has been invoked to restrain state criminal proceedings. 424 U.S. at 814–17, 96 S.Ct. at 1244–46.

test," *id.* We therefore must determine whether the district court abused its discretion in finding that "exceptional circumstances" outweighed the court's "virtually unflagging obligation ... to exercise the jurisdiction given [it]," *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246.

### B. Application of the Doctrine

■ The district court in this case correctly articulated the *Colorado River* "exceptional circumstances" test. The analysis in its opinion, however, indicates that it balanced the relevant factors without giving weight to the heavy presumption favoring the exercise of jurisdiction. *See American Bankers Ins. Co. v. First State Ins. Co.,* 891 F.2d 882, 885 (11th Cir.1990) (reversing stay because district court failed to give sufficient regard to the presumption); *Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185, 1191 (5th Cir.1988) (reversing dismissal because district court misapplied several factors and failed to "heavily weight" presumption); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986) (reversing dismissal because district court gave "no weight" to presumption). The court found that "good cause" existed for the dismissal of the federal proceedings based on the parties and issues in the local lawsuit, the lack of personal jurisdiction over defendant Pocklington, and "the *Colorado River* doctrine principles," Opinion at 9. But there is no indication in its decision that the court balanced the factors in favor of dismissal against its obligation to exercise jurisdiction even in the face of duplication and judicial inefficiency. Indeed, the court's use of the term "good cause," rather than "exceptional circumstances," as the basis for dismissal evinces an insufficient regard for that obligation.

■ We therefore are constrained to conclude that the court dismissed this case simply because, on balance, the Commonwealth court seemed the better place for the issues to be resolved. This approach seems eminently reasonable at first blush; staying or dismissing a duplicative federal lawsuit may avoid friction between jurisdictions, reduce inefficient use of judicial resources and limit the financial burden on litigants. Such a liberal approach toward dismissal is, however, inconsistent with the *Colorado River* requirement that the balance be "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. Duplication and inefficiency are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction. In *Moses Cone,* 460 U.S. at 25–26, 103 S.Ct. at 941–42, the Court emphasized that "our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction" (emphasis in original).

■ Because the district court did not apply the proper standard, its decision to dismiss Villa Marina's federal suit must be vacated.[9] Although we could ourselves now weigh the factors considered by the district court, *see, e.g., American Bankers Ins. Co.,* 891 F.2d at 885–86; *Evanston Ins. Co.,* 844 F.2d at 1191–93; *Bethlehem Contracting Co.,* 800 F.2d at 327–28, we prefer instead to give the district court the opportunity to conduct the proper balancing in the first instance. This appears to be a close case, and the district court may be privy to relevant facts that do not appear in the appellate record because that court previously saw no need to relate them. We cannot properly conduct a review for abuse of discretion until after that discretion has been properly exercised, and we therefore remand the case to the district court for reconsideration.

---

**9.** Our conclusion that the district court erred in dismissing Pocklington from the case for lack of personal jurisdiction further supports the decision to remand because the court included "the personal jurisdiction controversies" as one factor influencing its decision to dismiss under *Colorado River.*

In returning the issue to the trial court, we also choose to offer it some guidance for what we anticipate will be a difficult decision. The *Colorado River* doctrine does not provide a mechanical formula for determining when dismissal is proper, and similar factors have been given varying importance by different courts. *Compare, e.g., Evanston Ins. Co.*, 844 F.2d at 1192–93 (reversed dismissal, discounting potential for piecemeal litigation and rejecting relevance of state law issues) *with, e.g., General Reinsurance Corp. v. CIBA–Geigy Corp.*, 853 F.2d 78, 81–82 (2nd Cir.1988) (affirming dismissal, highlighting potential for piecemeal litigation and giving weight to presence of "purely state law issues"). We therefore think it worth giving some attention to our view of the significance of certain factors argued by the parties in this case.

We begin by noting that, despite Villa Marina's effort to focus our attention solely on the Commonwealth suit filed by Hatteras, the question for the district court is whether it should defer to the consolidated action containing both Hatteras' declaratory judgment suit *and* Villa Marina's separately filed suit against Rivera and Yacht Sales. Indeed, Villa Marina's decision to file its own suit in the Commonwealth court before initiating its federal action arguably is the primary factor in this case counseling in favor of a surrender of federal jurisdiction.

Other courts faced with second lawsuits brought by the same plaintiff have considered that factor relevant in upholding district court decisions to dismiss the federal case. *See, e.g., American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1260–61 (9th Cir.1988); *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1561 (7th Cir.1989); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir.1988); *Telesco v. Telesco Fuel and Masons*, 765 F.2d 356, 363 (2d Cir.1985).

In *American Int'l Underwriters*, the Ninth Circuit invoked removal principles in support of its conclusion that plaintiffs should not be allowed to refile their complaint in federal court. The court observed that the right to remove a state court case to federal court is limited to defendants under 28 U.S.C. § 1441, and it stated that removal principles seemed applicable in the context of a repetitive lawsuit because the dual filing "had the same effect as if [the plaintiff] had actually removed the original suit," 843 F.2d at 1260. The Ninth Circuit relied on *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), in which the Supreme Court analyzed the removal statute, and quoted from a House Report stating that " 'it is believed to be just and proper to require the plaintiff to abide his selection of a forum,' " *id.* at 106, 61 S.Ct. at 871 (quoting H.R. No. 1078, 49th Cong., 1st Sess. 1 (1887)). The circuit panel drew the following conclusion from its research:

> In short, ... the removal statute seem[s] to reflect a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant.

*Id.* at 1261. *See also* Note, "Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of *Colorado River*," 44 U.Chi.L.Rev. 641, 666–667 (1977) (hereinafter "Federal Court Stays") (removal statute arguably expresses a policy determination limiting plaintiff to initial forum, "counterbalanc[ing] the obligation to exercise jurisdiction in the subsequent repetitive federal lawsuit.")

Assuming that removal policy should be given some force in the *Colorado River* context, it would not necessarily lead to dismissal of Villa Marina's federal lawsuit. The district court still must determine how much weight the policy should carry in this particular case. Villa Marina's federal lawsuit does not duplicate the claims that *it* filed in Commonwealth court, and the defendants in each suit also are different. Villa Marina arguably dismissed Pocklington from the Commonwealth lawsuit precisely to avoid unnecessary duplication. Thus, while Villa Marina's role as a plaintiff in the Commonwealth suit may be a significant factor in the *Colorado River* balance, it is certainly not determinative.

A related factor that could tip the balance toward dismissal is the motivation for the second lawsuit. In *Moses H. Cone,* the Supreme Court stated that it found "considerable merit" in the idea that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River,*" 460 U.S. at 17 n. 20, 103 S.Ct. at 938 n. 20. Before Villa Marina filed the federal suit, the Commonwealth court had rejected its bid for a preliminary injunction barring Yacht Sales from representing Hatteras in Puerto Rico. Thus, if Villa Marina went to federal court solely in reaction to its failure in the Commonwealth court, that fact should be held against it in the *Colorado River* balance. We previously have criticized such forum-shopping when a Commonwealth *defendant* "rush[ed] over to the federal courthouse in the hope of obtaining a more favorable determination," *Fuller Co.,* 782 F.2d at 309–10. The sentiment applies *a fortiori* with respect to a Commonwealth *plaintiff. See Telesco,* 765 F.2d at 363 (affirming dismissal of federal suit filed by state court plaintiff that appeared both vexatious and reactive).[10]

The "inconvenience" factor, as that term has been used by the Supreme Court, does not point toward abstention in this case. In raising this factor, the Court seemed to be concerned with the physical proximity of the federal forum to the evidence and witnesses. *See Colorado River,* 424 U.S. at 818, 820, 96 S.Ct. at 1246, 1248. *Accord Evanston Ins. Co.,* 844 F.2d at 1191. In this case, however, the state and federal fora are in the same city.

Two other factors that could prove significant are the relative progress of the two cases and the difficulty of the substantive state law questions. Hatteras argues that the Commonwealth proceeding is substantially more developed than is the federal action, noting that the Commonwealth court held a three-day preliminary injunction hearing and that numerous depositions have been taken in that case. It is unclear

to us, however, whether the depositions and hearing represent progress that should count in the balance toward dismissal. Villa Marina plausibly asserts that the depositions could be utilized in either litigation, and a three-day hearing for the limited purpose of deciding on preliminary injunctive relief may not have advanced the state case in any appreciable way. *Cf. Nakash v. Marciano,* 882 F.2d 1411, 1412–13 (9th Cir.1989) (federal suit filed almost four years after state suit, after 70 hearings, nearly 100 depositions, 300,000 documents); *Interstate Material Corp.,* 847 F.2d at 1289 (by the time federal court heard motion to dismiss, state action had reached appellate court).

Both the federal and Commonwealth cases involve only Commonwealth law, but this factor does not necessarily counsel in favor of dismissal. Although the presence of a federal law issue "must always be a major consideration weighing against surrender [of jurisdiction]," *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942, the presence of state law issues weighs in favor of surrender only in "rare circumstances," *id. See American Bankers Ins. Co.,* 891 F.2d at 886; *Evanston Ins. Co.,* 844 F.2d at 1193; *Bethlehem Contracting Co.,* 800 F.2d at 328. Courts generally have agreed that rare circumstances exist only when a case presents "complex questions of state law that would best be resolved by a state court," *American Bankers Ins. Co.,* 891 F.2d at 886; *Noonan South, Inc. v. Volusia County,* 841 F.2d 380, 382 (11th Cir. 1988). *See also Arkwright–Boston Mfrs. Mutual v. City of New York,* 762 F.2d 205, 211 (2d Cir.1985) (case raises "serious questions of state law, which include whether a party may recover in tort for a purely economic loss, absent physical injury ... and the construction of state and municipal building, safety, and fire codes"). *Cf. Giardina v. Fontana,* 733 F.2d 1047, 1051 (2d Cir.1984) ("garden variety" federal diversity case applying well-settled state law principles).

---

10. We offer no view here as to whether Villa Marina's federal suit was, in fact, reactive or vexatious. The district court is better able to make such a determination in light of its more substantial contact with the parties.

It is possible that "rare circumstances" weighing in favor of dismissal exist here. The law at the foundation of this case is the Puerto Rico Dealer's Act, Law 75, which prevents manufacturers from terminating dealer contracts in the absence of just cause. Although federal courts have interpreted Law 75 on numerous occasions, *see, e.g., Luis Rosario, Inc. v. Amana Refrigeration, Inc.,* 733 F.2d 172 (1st Cir. 1984); *Sudouest Import Sales Corp. v. Union Carbide Corp.,* 732 F.2d 14 (1st Cir.1984); *Pan American Computer Corp. v. Data General Corp.,* 652 F.2d 215 (1st Cir.1981); *Morales v. Gregg Shirt Makers,* 682 F.Supp. 142 (D.P.R.1988), we also have recognized the need to consult with the Commonwealth courts about certain aspects of the statute. *See Medina & Medina v. Country Pride Foods, Ltd.,* 825 F.2d 1 (1st Cir.1987) (certification to Puerto Rico Supreme Court). The district court therefore should consider whether the specific Law 75 issues in this case, or other issues of Commonwealth law, are sufficiently novel that this factor weighs in favor of dismissal.

Finally, we offer some observations regarding the concern for avoiding piecemeal litigation. Dismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues. As noted above, something more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction. *See American Bankers Ins. Co.,* 891 F.2d at 886 ("A federal court cannot properly decline to exercise its statutory jurisdiction ... simply because judicial economy might be served by deferring to a state court.") In *Colorado River,* the Supreme Court relied upon a federal statute, the McCarran Amendment, whose "primary policy" was avoidance of piecemeal litigation regarding water rights. *Moses H. Cone,* 460 U.S. at 19–20 & n. 22, 103 S.Ct. at 938–39 & n. 22.

No such policy is at stake here. Nor is there the risk of results as harsh as those that concerned us in *Liberty Mutual Ins. Co. v. Foremost–McKesson, Inc.,* 751 F.2d 475, 477 (1st Cir.1985), where the possibility existed for the state and federal courts to interpret the same standard insurance policy language differently, "with the result that McKesson would find itself without sufficient liability insurance coverage from the insurers after years of paying premiums." [11]

Thus, in considering whether the concern for avoiding piecemeal litigation should play a role in this case, the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in the Commonwealth court.

We emphasize that our discussion of the *Colorado River* issue does not necessarily cover all factors that may be relevant and certainly does not analyze fully all those that we have addressed. The district court therefore should not deem itself in any way limited by our discussion when it reconsiders the propriety of dismissing the federal case in light of the presumption in favor of retaining jurisdiction.

*Reversed in part, vacated in part and remanded.* Appellants shall receive half of their costs.

**11.** It is important to recognize that the federal suit in *Liberty Mutual* was a declaratory judgment action, a context in which "a federal court's duty to exercise its jurisdiction is relaxed," *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 308–09 n. 3 (1st Cir.1986). Thus, courts may dismiss federal declaratory judgment actions on grounds that are less than exceptional. *Id.*