**DARLING'S, d/b/a Darling's Honda/Nissan, Plaintiff,**

v.

**NISSAN MOTOR CORP., Defendant.**

Civ. No. 94–0066–B.

United States District Court, D. Maine.

Sept. 2, 1994.

Warren M. Silver, Bangor, ME, for plaintiff.

Harold J. Friedman, Friedman & Babcock, Portland, ME, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Defendant, Nissan Motor Corporation, moves to dismiss this action on the grounds that the Court lacks subject matter jurisdiction. Nissan also asserts that, even if the Court has jurisdiction, it should nevertheless dismiss or stay the action because a parallel state-court litigation is currently pending between these parties.

## BACKGROUND

Nissan manufactures and distributes cars, trucks, and parts throughout the continental United States. Darling's sells automobiles and has been a Nissan dealer since about 1981. The parties have operated under a series of contracts, the most recent of which was executed in 1990. According to this contract, Darling's is obligated to provide warranty repairs to Nissan vehicles without charge to the vehicle's owner. Nissan is required to reimburse Darling's for these warranty repairs.

At the center of the dispute between the parties is the rate at which Nissan reimburses Darling's for warranty repairs. In Maine, the warranty reimbursement rate is governed by Maine's Regulation of Business Practices Between Motor Vehicle Manufacturers, Distributors, and Dealers, 10 M.R.S.A. §§ 1171–86 (1980 & Supp.1993). In 1991, the Maine legislature amended these provisions to require manufacturers to reimburse dealers for parts and labor provided in warranty work at the "retail rate customarily charged by that [dealer]" for non-warranty repairs. 10 M.R.S.A. § 1176 (Supp.1994). After 1991, the parties began to dispute the applicability of the statute, particularly its 1991 amendments, to their contract; the scope of the statute; and the necessary prerequisites to a claim under the statute.

After some unsuccessful negotiations between the parties, Darling's began filing actions in the Maine District Court, Small Claims Division, in Bangor. To date, Darling's has filed 69 such claims. The Maine District Court has resolved eight of these claims finding that Darling's had not submitted a "particularized claim" as required by the statute. The Small Claims Court thus did not allow Darling's to recover increased reimbursement from Nissan for those claims. The remaining actions are still pending.

In January 1994, Darling's informed Nissan that it intended to name the Nissan owners for whom warranty work was completed as co-defendants in upcoming small-claims actions. (*See* Def.'s Mem. at Ex. A.) In February 1994, Darling's notified Nissan of its intention to "take legal action against Nissan for reimbursement, additional damages and attorney's fees." (Am.Complaint at Ex. H.) Darling's referred, in particular, to this Court's decision in a similar case, *Acadia Motors, Inc. v. Ford Motor Co.*, 844 F.Supp. 819 (D.Me.1994), in which the Court held that the 1991 amendments to § 1176 applied to pre–1991 contracts without violating the Contracts Clause of the Maine Constitution.

On March 3, 1994, Nissan filed a twelve-count declaratory judgment action in Maine Superior Court. On March 17, 1994, Darling's filed its Complaint in this Court. Like Nissan, Darling's also demanded declaratory

and injunctive relief. Nissan moved to dismiss arguing that it is " 'uneconomical as well as vexatious for a federal court to proceed in a *declaratory judgment* suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.' " (Def.'s Mem. at 5 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942) (emphasis added)).) In an apparent response to this argument, Darling's amended its Complaint deleting all requests for declaratory and injunctive relief. Nissan again moves to dismiss or stay the action pending resolution of the state-court action. This time, Nissan also argues that the Court lacks subject matter jurisdiction to hear this matter.

## JURISDICTION

The threshold issue is whether the Court has jurisdiction over the subject matter of the case. Darling's asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332. Nissan disagrees, arguing that the matter in controversy does not exceed $50,-000 as required by § 1332.

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 589–90, 82 L.Ed. 845 (1938), the Supreme Court established the standard for determining whether the requisite jurisdictional amount has been properly alleged:

> [T]he sum claimed by the plaintiff controls if the claim is apparently in good faith.... But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed ... the suit will be dismissed.

*Id.* (footnotes omitted).

In its Amended Complaint, Darling's alleges compensatory damages of $43,338.17, clearly less than the jurisdictional amount of $50,000. The Amended Complaint also includes, however, a demand for punitive damages and attorney fees. Nissan argues that punitive damages are not available in this action and, therefore, that Darling's cannot recover more than $50,000. Darling's responds, however, that it has adequately alleged the jurisdictional amount, even without

relying on its punitive damages claim, through its demand for attorney fees.

■ If authorized by statute or by contract, attorney fees may constitute part of the jurisdictional amount. *Department of Recreation & Sports v. World Boxing Assoc.,* 942 F.2d 84, 89 (1st Cir.1991). In Maine, if a dealer "brings legal action to collect [a] disapproved claim and is successful in the action, the court *shall* award the dealer ... reasonable attorney fees." 10 M.R.S.A. § 1176 (1980) (emphasis added). Because attorney fees are expressly authorized in § 1176, such fees are properly considered in determining the amount in controversy. *See World Boxing,* 942 F.2d at 89.

■ According to an affidavit submitted by Attorney Warren Silver, Darling's has already spent $9332.50 on attorney fees.[1] The total amount in controversy is, therefore, $52,670.67, including the attorney fees expended to date. Nissan argues that the figure provided by Attorney Silver should not be considered because the Amended Complaint did not provide an estimate or itemization of attorney fees. Darling's may, however, meet its burden of pleading the jurisdictional amount either "by amending the pleadings *or* by submitting affidavits." *World Boxing,* 942 F.2d at 88 (emphasis added). Darling's has met this burden through the Silver Affidavit. The Court is satisfied that Darling's has sufficiently alleged facts supporting a finding that its claim involves more than the jurisdictional amount. The Court, therefore, has jurisdiction to hear this matter.

### DISMISSAL OR STAY

The Court next must decide what effect, if any, the action currently pending in the state court will have on the proceedings in this Court. Nissan argues that the Court should dismiss, or at least stay, the federal action pending resolution of the parallel state-court action under the doctrine articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47

L.Ed.2d 483 (1976). Darling's responds that this case does not present the exceptional circumstances required by *Colorado River* to justify stay or dismissal.

Both the state and federal proceedings center around the dispute between the parties over warranty reimbursement rates. In its state-court complaint, Nissan requested a declaration that the 1991 amendments to § 1176 do not apply to pre–1991 contracts and that applying § 1176 to such contracts would violate the Maine Constitution. Nissan also raised a number of questions of statutory interpretation including: (1) whether special discounts should be considered when calculating Darling's "customary charge;" (2) whether Darling's claims were sufficiently "particularized;" (3) whether "goodwill offerings" should be included as "warranty repairs;" and (4) whether Nissan can limit the number of hours of labor reimbursed according to its Warranty Flat Rate Manual. Nissan brought a number of other claims in state court including several regarding Darling's threats to name Nissan owners as co-defendants in future small-claims actions.

Darling's filed a counterclaim in the state-court litigation demanding reimbursement for parts, labor, and attorney fees. Darling's also demanded an injunction ordering Nissan to change its reimbursement policies and procedures.

The only claims currently pending before this Court are Darling's demands for parts and labor reimbursement, attorney fees, and punitive damages. Darling's deleted its requests for declaratory or injunctive relief in its Amended Complaint. Nissan has not yet answered Darling's federal Complaint. Although Nissan may bring its state-court claims in this forum as counterclaims, it is not required to raise these claims as compulsory counterclaims because they have already been advanced in the state-court proceeding. *See* Fed.R.Civ.P. 13(a)(1).

In considering whether the Court should stay or dismiss the federal action, the Court begins with the proposition that federal

---

1. Attorney Silver also identifies costs of $793.84. Costs are expressly excluded from the amount in controversy, however. *See* 28 U.S.C. § 1332

("the matter in controversy [must] exceed[] the sum or value of $50,000, *exclusive of interest and costs* ") (emphasis added).

courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). In some exceptional circumstances, however, wise judicial administration permits the dismissal or stay of a federal suit due to the presence of a concurrent state proceeding. *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. at 1246. The Supreme Court has identified several factors that a federal court may consider when deciding whether "exceptional circumstances" justify a stay or dismissal:

> (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties.

*Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991) (citing *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244 and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* 460 U.S. 1, 25–26, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Courts have also considered "the vexatious or contrived nature of the federal claim." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 12 (1st Cir.1990) (citation omitted), *cert. denied*, — U.S. —, 112 S.Ct. 1674, 118 L.Ed.2d 393 (1992). The Supreme Court has stated, however, that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

■ The first two factors identified in *Colorado River* are not applicable to this case. First, there is no property involved in these actions, so neither court can assume jurisdiction over a *res*. Second, the state court is only a few blocks away from the federal court, therefore neither is more convenient than the other.

Another factor to be considered is the order in which the courts obtained jurisdiction over this matter. Nissan filed its state-court complaint on March 3, 1994. Darling's filed its Complaint in this Court two weeks later, on March 17, 1994. A two-week delay, by itself, "does not seem to argue either in favor of or against the exercise of jurisdiction." *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir.1991) (also considering two-week period between filings). The Court, therefore, also looks to the relative progress of the two actions. *Villa Marina*, 915 F.2d at 15. Nissan argues that the state-court litigation has progressed further than the federal action because an answer has been filed in state court while no answer has yet been filed in this Court. Because Nissan has chosen, however, to file this Motion in place of an answer; the Court does not find this progress particularly significant. The state court currently has before it a Motion to Stay filed by Darling's, but no date has been set for hearing that Motion. Neither party has begun discovery in either action. Under these circumstances, the Court is not persuaded that either action has progressed significantly beyond another.

A related consideration is " 'the vexatious or reactive nature of either the federal or the state litigation.' " *Villa Marina*, 915 F.2d at 15 (quoting *Moses H. Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. at 937 n. 20). At first blush, it would appear that the second-filed suit was filed in reaction to the first. Certainly Nissan characterizes the federal action brought by Darling's as a "classic example of 'reactive' litigation." (Def.'s Mem. at 10.) As an instate defendant in the state-court litigation, Darling's was barred from removing the state action to federal court. *See* 28 U.S.C. § 1441(b). Nissan contends that Darling's was simply trying to circumvent this limitation on removal when it filed a separate federal-court action.

The Court also must consider, however, Nissan's motivation for filing its declaratory judgment action in state court. Nissan alleges that the Small Claims Court Judge who

heard Darling's claims repeatedly urged Nissan to file an action in state Superior Court to finally resolve the dispute. Darling's contends, however, that Nissan's declaratory judgment action in state court was a contrived, defensive tactic taken only after Darling's notified Nissan of this Court's decision in *Acadia Motors*, 844 F.Supp. at 819, and of its intention to take further legal action against Nissan.

There is little question that the parties were sensitive to the forum in which the action was brought. This Court's decision in *Acadia Motors* resolved issues raised by Nissan in Counts I and II of its state-court complaint in a way contrary to the position taken by Nissan. *Acadia Motors*, 844 F.Supp. at 824–28. It is unclear what position the state court would take on these issues.[2] It is no surprise, therefore, that Darling's preferred the federal forum, while Nissan selected the state court. Both parties appear to have made calculated, tactical decisions throughout their attempts to resolve this dispute. Neither party's actions appear, however, to have been taken in bad faith. The Court, therefore, finds this factor to be inconsequential as it relates to dismissal.

The Court next considers whether federal law or state law controls and the adequacy of the state forum to protect the interests of the parties. *Burns*, 931 F.2d at 146 (citing *Moses H. Cone*, 460 U.S. at 25–26, 103 S.Ct. at 941–42). The actions in this case involve solely issues of state law. The First Circuit has cautioned, however, that this fact, alone, is not enough to sustain dismissal, "[a]lthough [a] case involves only issues of [state] law, the same would be true of any case in which federal jurisdiction is based on diversity." *Rojas–Hernandez v. Puerto Rico Elec. Power Auth.*, 925 F.2d 492, 496 (1st Cir. 1991). The *Rojas–Hernandez* court continued, "[w]hile ... the presence of federal-law issues must always be a major consideration weighing against surrender, ... only in rare circumstances will the presence of state-law issues weigh in favor of that surrender." *Id.*

(citations and internal quotations omitted). Such "rare circumstances" exist "only when a case presents 'complex questions of state law that would best be resolved by a state court.'" *Villa Marina*, 915 F.2d at 15 (quoting *American Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir.1990)).

The Court is satisfied that such rare circumstances exist in this case. Most of the issues submitted in these actions present novel and unsettled questions of state law. *See Villa Marina*, 915 F.2d at 16 (questions involving Puerto Rico's Dealer's Act may be sufficiently novel to weigh in favor of dismissal). Only two of the matters presented by Nissan's state action were decided by this Court in *Acadia Motors*—whether the 1991 amendments to § 1176 apply to contracts entered into before 1991 and whether the amendments violate the contracts clause of the Maine Constitution. *See Acadia Motors*, 844 F.Supp. at 824–28. The remaining issues focus on the proper interpretation of this state statute and the more practical problem of how it should be implemented. These novel interpretation and implementation questions are more appropriately decided by the state court. This is particularly true, here, where the statute is part of a larger regulatory scheme governing the relationship between automobile manufacturers and dealers.

The Court is also concerned with the possibility of piecemeal litigation in this action. The desire to avoid piecemeal litigation must result from more than "the routine inefficiency that is the inevitable result of parallel proceedings." *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir.1991). To be considered exceptional, piecemeal adjudication must give rise to special complications. *Id.* Special complications may arise where proceeding in two fora may result in harsh, contradictory, or unfair consequences. *Id.*

Concurrent resolution would not result in contradictory or unfair conclusions if the first decision issued would have a res judicata or

---

**2.** Although some of the issues raised by the parties were resolved in the Small Claims Court, that court's decisions are not binding in these actions. *See* 14 M.R.S.A. § 7485 (Supp.1994) ("Any fact found or issue adjudicated in a proceeding [in Small Claims Court], may not be deemed found or adjudicated for the purpose of any other cause of action. The judgment obtained shall be res judicata as to the amount in controversy.").

collateral estoppel effect in the other court. *See Rojas–Hernandez,* 925 F.2d at 497. The effect of a prior decision on subsequent litigation is a question of state law. *Burns,* 931 F.2d at 143. The Maine Supreme Judicial Court has held that:

> [T]he doctrine of res judicata bars the relitigation in a present action of all issues that were tried, or may have been tried in a prior action if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision now were, or could have been, litigated in the prior action.

*Currier v. Cyr,* 570 A.2d 1205, 1208 (Me. 1990) (citing *Beegan v. Schmidt,* 451 A.2d 642, 644, 646 (Me.1982)).

In these parallel proceedings, it is undisputed that the parties involved in both actions are the same. All of the issues involved in both actions could have been raised in either action. Therefore, once a final judgment has been entered by either court, this judgment would have res judicata effect as to the other proceeding.[3] However, the real danger in this case is the likelihood that some of the questions presented will be resolved by pretrial and prejudgment orders issued well before the judgment becomes final. These preliminary decisions would not be binding on subsequent determinations of the same issues in the other forum. Accordingly, there is a danger of inconsistent results. Moreover, the possibility of contradictory results is increased in the instant case because most of the questions presented are unsettled.

When considering the desirability of avoiding piecemeal litigation, the Supreme Court also considered whether the issues raised in each action were "easily severable." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939 (finding that arbitrability issue in federal court was easily severable from merits of underlying dispute in state-court action, thus piecemeal resolution would not justify stay or dismissal). In the case at bar, the issues are not easily severable. In fact, many of the questions of statutory interpretation raised by Nissan in its state-court action would have to be resolved by this court in order to determine whether Darling's is entitled to its demands for damages. For example, the Court could not determine whether Darling's is entitled to recover damages without deciding what should be considered "customary" charges or whether Darling's properly made a "particularized" claim.

Because the danger of contradictory and unfair results is a real possibility and because the issues are not easily severable, the Court finds that the desire to avoid piecemeal litigation results from more than the inevitable duplication and inefficiency which routinely accompany parallel proceedings. This factor therefore strongly counsels in favor of dismissal or stay.

Considering all of the relevant factors involved in this action, including those which are non-determinative by themselves but persuasive collectively, the Court is satisfied that exceptional circumstances exist to justify dismissing or staying this action and giving the state court an opportunity to speak on these matters of important state concern.

The only question remaining is whether to dismiss the action without prejudice or to stay the proceeding. Whether a stay or dismissal is more appropriate has been left open by the Supreme Court, *see Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943; nor has the First Circuit expressed an opinion favoring one method over another, *compare Villa Marina,* 915 F.2d at 11–16 (dealing with dismissal) *with Burns,* 931 F.2d at 143–45 (dealing with stay). There appears to be little practical differences between the two approaches under these circumstances. *See Burns,* 931 F.2d at 144–45 (treating a stay as a final judgment because it "conclusively determine[s] the disputed questions ... by decisively leaving them for resolution to the state court.") (citations and internal quotations omitted).

---

**3.** The doctrine of collateral estoppel also requires that "the determination of an essential fact or issue [be] actually litigated and resolved by a *valid final judgment*" in order to be conclusive in subsequent litigation. *Spickler v. Dube,* 644 A.2d 465, 469 n. 7 (Me.1994) (emphasis added) (citations omitted).

Because the Court can discern no reason to prefer a stay over a dismissal without prejudice, the Court *GRANTS* Defendant's Motion to Dismiss without prejudice.

*SO ORDERED.*