Tucker W. McLAUGHLIN, Plaintiff,

v.

MINERS & MERCHANTS BANK AND TRUST COMPANY, et al., Defendants.

Civ. A. No. 87–0230–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 6, 1991.

Wyatt B. Durrette, Jr., Durrette, Irvin & Lemons, P.C., Richmond, Va., Timothy W. Hudson, Slaughter, Jackson & Hudson, Bristol, Tenn., for Tucker W. McLaughlin.

S. James Thompson, Jr., Lynchburg, Va., for United Virginia Bank.

## MEMORANDUM OPINION

WILSON, District Judge.

This is an action by plaintiff, Tucker W. McLaughlin ("McLaughlin"), against defendant, United Virginia Bank ("UVB"),[1] alleging "lender liability" arising in tort and contract. McLaughlin is a resident of South Carolina. UVB is a Virginia corporation with its principal place of business in Richmond, Virginia. Miners & Merchants Bank and Trust Company ("Miners & Merchants") and Grundy National Bank ("Grundy National") were defendants, but the claims against them have settled. Each of these banks, however, is a Virginia corporation with its principal place of business in this state. There is diversity of citizenship, and the requisite amount is in controversy exclusive of interests and costs and, therefore, the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. This case was stayed on March 23, 1988, in light of parallel proceedings in the Circuit Court of Buchanan County, Virginia. This matter is before the court, *sua sponte*, to consider whether the court should continue to abstain for reasons of judicial economy. The court finds that the exceptional circumstances and concerns that justified abstention on March 23, 1988, now justify dismissal.

---

1. Since this action was filed, United Virginia Bank's name has been changed to Crestar Bank.

## I

McLaughlin's failed business relationship with UVB has spawned no less than eleven lawsuits between UVB and McLaughlin or various companies in which McLaughlin has a controlling interest. The pertinent companies in which McLaughlin has had a controlling interest are Southside Oil Company, Inc. ("Southside"), Tazewell Oil Company, Inc. ("Tazewell"), and Cardinal Fuels, Inc. ("Cardinal"). McLaughlin is the president and sole shareholder of Southside. Southside wholly owns Tazewell and Cardinal, and McLaughlin is president of those companies, as well. In fact, all of McLaughlin's businesses were, in McLaughlin's words, "very much interrelated, lending large sums of money to each other and owning parts of each other; ... it was all one ball of wax." McLaughlin Affidavit at 2.

From early 1981 through May 1984, UVB made loans to Southside and to its subsidiaries. Southside and its subsidiaries provided collateral for the loans, and the loans were personally guaranteed by McLaughlin. According to McLaughlin, corporate formalities were ignored in his dealings with UVB, and he and his companies were treated as one. As McLaughlin states:

> I personally guaranteed all of the credits. As our informality grew, the bank and I agreed that all of my business interests—real estate, oil companies, and newspaper assets, in partnership and corporate form—even my home, would all be used as collateral for the loans, and corporate distinctions within our relationship were not even considered or discussed.

McLaughlin Affidavit at 1–2.

Because McLaughlin's companies constantly overdrew their checking account at UVB, UVB required additional collateral. McLaughlin pledged his one-half interest in a partnership known as Halifax Square Shopping Center ("Halifax Square"). Finally, in May 1984, UVB refused to honor any more overdrafted checks. UVB also requested and received a demand note secured and guaranteed by McLaughlin to cover the overdraft balance of $266,146.51.

During the same time period, UVB allegedly released confidential information concerning McLaughlin and his companies to prospective buyers of two of McLaughlin's companies. McLaughlin alleges that the information released intimated that he was in dire financial condition and that the release of that information adversely affected his relationship with those potential buyers.

Meanwhile, in early 1983, Miners & Merchants loaned Cardinal $250,000 on a demand note, which Cardinal secured with its accounts receivable and other assets and which was personally guaranteed by McLaughlin. Upon learning of McLaughlin's financial problems with UVB, Miners & Merchants also required additional collateral. To satisfy Miners & Merchants' demand for additional collateral, Cardinal pledged Tazewell's equipment and other assets. McLaughlin also unsuccessfully sought to have Miners & Merchants convert Cardinal's demand notes into installment notes. Miners & Merchants recorded liens on Tazewell's assets, notified its customers of those liens, and notified Grundy National of a lien it claimed on McLaughlin's funds deposited in Grundy National. As a consequence of that lien, Grundy National refused to honor checks drawn on McLaughlin's Grundy National account. McLaughlin alleges that the actions of the three banks effectively denied him access to funds, causing Tazewell to go out of business and causing McLaughlin and his other companies to suffer serious financial losses.

## II

No less than eleven lawsuits between UVB and McLaughlin or his companies have arisen out of the above facts:

(1) On June 3, 1985, UVB brought an injunction suit in the Circuit Court of Buchanan County, Virginia, against Tazewell to repossess inventory;

(2) Tazewell filed an action for damages on September 10, 1985, in the Circuit Court for the City of Richmond

against UVB, Miners & Merchants, and Grundy National;

(3) McLaughlin and various other individuals brought an action on March 26, 1986, in the Circuit Court of Buchanan County alleging breach of contract, unreasonable handling of collateral, *tortious interference with contractual relations*, and intentional infliction of emotional distress;

(4) On December 31, 1986, UVB brought a collection suit in the Circuit Court of Buchanan County against McLaughlin and several of his companies to recover on various notes and guarantees;

(5) Cardinal brought suit against UVB in the Circuit Court of Buchanan County on May 14, 1987, alleging tortious interference in Cardinal's contractual relationship with Miners & Merchants;

(6) On that same date, Tazewell and Cardinal filed a separate action in the Circuit Court of Buchanan County against UVB alleging conversion, breach of fiduciary duty, and malicious prosecution;

(7) On June 21, 1987, Cardinal brought suit against UVB and Miners & Merchants in the Circuit Court of Buchanan County alleging damages for conspiracy and breach of fiduciary duty;

(8) On June 4, 1987, McLaughlin brought this action against UVB, Miners & Merchants, and Grundy National alleging conspiracy, breach of contract, breach of fiduciary duty, tortious interference with contract, and others;

(9) On July 25, 1988, UVB brought a declaratory judgment action in the Circuit Court of Buchanan County against McLaughlin to determine the status of notes and collateral held by UVB;

(10) On June 1, 1990, McLaughlin brought an action in this court against UVB alleging malicious prosecution, "prima facie tort," and slander of credit; and

(11) On June 4, 1990, McLaughlin and his companies brought an action in the Circuit Court of Halifax County against UVB alleging breach of contract.

Most of the Buchanan County suits were consolidated for trial. In an opinion entered on March 23, 1988, this court found various claims in this action legally insufficient and concluded that many of the remaining claims would be barred by *res judicata* following the trial of the consolidated civil action in Buchanan County. Accordingly, on UVB's motion the action was stayed until McLaughlin's individual claims were tried in Buchanan County. Those claims were tried in the consolidated civil action in April and May of 1988. Several of the corporate cases were nonsuited at trial. However, on May 13, 1988, after five weeks of trial, the jury returned a verdict for Tazewell and against UVB on Tazewell's claims that UVB conspired to injure Tazewell in its business relationships and tortiously interfered with Tazewell's contractual relationship with Miners & Merchants. The jury awarded compensatory and punitive damages totalling $900,000. The jury also found against UVB and for McLaughlin in UVB's collection suit against McLaughlin. A verdict was not returned on McLaughlin's individual claims against UVB. Rather, an order, which was agreed to by McLaughlin and UVB, provided:

The court sustains the Motion of UVB to strike the evidence of Tucker W. McLaughlin made at the conclusion of all the evidence and, as to the claims of Tucker W. McLaughlin asserted against UVB herein, gives judgment in favor of UVB without prejudice, however, to the claims asserted by Tucker W. McLaughlin in a suit now pending in the United States District Court for the Western District of Virginia, Abingdon Division, in which he is a plaintiff and United Virginia Bank, Miners & Merchants Bank & Trust Company, and Grundy National Bank are or were defendants, and

is designated as Civil Action # 87–0415–R.[2]

Of course, the agreed order circumvented the essential purpose of this court's stay of March 23, 1988.

This case, for the most part, remained dormant until August of 1990 when the court, through its inquiry of the parties, learned that judgment had been rendered on McLaughlin's individual claims in the Buchanan County action, but that the judgment was by agreement of UVB and McLaughlin without prejudice to McLaughlin's claims in this case. Under the circumstances and in light of the fact that litigation arising out of the same facts remained in Buchanan County between one of McLaughlin's companies and UVB and in Halifax County between McLaughlin, individually, and several of his companies and UVB, the court notified the parties that it was considering abstention in accordance with *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[3] On the date of the hearing to consider the propriety of abstention, McLaughlin's counsel announced that McLaughlin's individual action against UVB pending in Halifax County had been nonsuited the preceding day, and he argued that there were no current parallel proceedings justifying abstention.

### III

In *Colorado River,* the United States Supreme Court recognized that although federal courts have a "virtually unflagging obligation to exercise jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Id.,* may permit "the dismissal of a

federal suit due to the presence of a concurrent state proceeding. . . ." *Id.* at 818, 96 S.Ct. at 1246. The Court identified some of the relevant factors: "(a) the assumption by a state court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the avoidance of piecemeal litigation; and (d) the order in which the concurrent forums obtained jurisdiction." *Kruse v. Snowshoe Co.,* 715 F.2d 120, 123 (4th Cir.1983), cert. denied, 465 U.S. 1065, 104 S.Ct. 1413, 79 L.Ed.2d 739 (1984) (citing *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246). The Court cautioned, however, that "no one factor is necessarily determinative," *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1247, and that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247. Later, in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court identified "two additional factors to consider in applying the exceptional-circumstances test: (a) whether the source of law is federal or state, and (b) the adequacy of the state court proceedings to protect the federal plaintiff's rights." *Kruse,* 715 F.2d at 123 (citing *Moses H. Cone,* 460 U.S. at 23, 26, 103 S.Ct. at 941, 942.) The Court also noted that there is "considerable merit" to the argument "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River. . . .*" *Moses H. Cone,* 460 U.S. at 18 n. 20, 103 S.Ct. at 937 n. 20.

■ Recognizing that a federal court should abstain for "wise judicial administration" only in "exceptional circumstances," the court abstains for the follow-

---

**2.** This action was originally filed in the Richmond Division of the United States District Court for the Eastern District of Virginia and was transferred to this court. The civil action number noted is the Richmond civil action number.

**3.** Although the court refers to the practice of deferring to parallel state proceedings under *Colorado River* as abstention, some courts have taken exception to the use of that term under

those circumstances. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 8, 11 (1st Cir.1990); *Medema v. Medema Builders, Inc.,* 854 F.2d 210, 212 n. 1 (7th Cir.1988). The term is used, correctly or incorrectly, because the *Colorado River* doctrine is commonly understood as a form of abstention. *E.g., Nakash v. Marciano,* 882 F.2d 1411, 1415 & n. 5 (9th Cir. 1989); *American Int'l. Underwriters, (Philli-pines), Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1257 (9th Cir.1988).

ing reasons: abstention will avoid further piecemeal litigation; the progress of the state court litigation has surpassed the progress of these proceedings; the source of law is state law; the state court proceedings are, or were on the date this action was initially stayed, adequate to protect McLaughlin's rights; and the filing of this action is "reactive."

### Avoiding Piecemeal Litigation

When this action was originally stayed in March of 1988, there were no less than nine lawsuits between UVB and McLaughlin or his companies arising out of the same basic facts[4]—an astounding fact in light of McLaughlin's admission that corporate distinctions were virtually ignored in his relationship with UVB. In order to avoid unnecessary and wasteful duplication of effort and recognizing that *res judicata* would soon bar many, if not all, of the claims asserted, on March 23, 1988, this case was stayed pending resolution of the consolidated civil action in Buchanan County, which was set to be tried beginning in April. As previously noted, the consolidated civil action in Buchanan County included McLaughlin's personal claims. Following five weeks of trial, however, and in circumvention of the essential purpose of the stay, UVB and McLaughlin entered into the agreement dismissing McLaughlin's individual claims without prejudice to this case. A verdict was returned for Tazewell and against UVB, and as also previously mentioned, Tazewell was awarded $900,000 in compensatory and punitive damages. Thus, although McLaughlin's individual claims and the claims of Tazewell were thoroughly litigated in the consolidated civil action in Buchanan County, UVB and McLaughlin, in effect, agreed to litigate McLaughlin's claims again in federal court. This occurred despite the fact that the court granted the initial stay on March 23, 1988, at UVB's request.

4. The Halifax County case and another federal case were filed after the court's original stay in March of 1988.

5. Parallel proceedings are necessary to embark upon the *Colorado River* analysis. *E.g., Interstate Material Corp. v. City of Chicago,* 847 F.2d

■ *Colorado River* and its progeny contemplate abstention only when "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943. When the court abstained in March of 1988, the consolidated civil action in Buchanan County was an adequate vehicle for the resolution of the issues between McLaughlin and UVB. It follows that if the stay was proper, the parties' circumvention of the stay through their agreed course of action in the state court proceedings was improper. Certainly, a stay proper in its inception does not become improper through manipulation by the parties. If changed circumstances warranted a lifting of the stay, the parties should have petitioned the court to make those changed circumstances known to the court. They could not, however, circumvent the court's order by agreement. *Colorado River* did not enunciate a technical principle subject to manipulation by the parties. *See, e.g., Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 695 (7th Cir.1985). To the contrary, *Colorado River* enunciated a flexible principle based upon practical concerns of judicial economy and fairness. *Moses H. Cone,* 460 U.S. at 16, 21, 103 S.Ct. at 937, 939; *see Lumen,* 780 F.2d at 694.

■ In April of this year, Cardinal, another McLaughlin corporation, is scheduled to go to trial on its claims against UVB. Rather than joining in that action, as he is entitled to do, McLaughlin has deliberately pursued piecemeal litigation. Furthermore, following this court's suggestion that abstention might be proper, McLaughlin, the day before the abstention hearing, nonsuited his individual parallel action against UVB in Halifax County rather than seeking transfer and consolidation with the Cardinal suit.[5] McLaughlin's tac-

1285, 1287 (7th Cir.1988). At the time the court entered its stay, McLaughlin's individual claims in Buchanan County and in this court were nearly identical. Parallel proceedings, however, need only be "substantially similar" to the concurrent federal court proceedings. *Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989);

tic of rushing to the Halifax County courthouse to nonsuit his individual action the day before this court's hearing is subject to objections similar to the court's objections to the agreement, which led to the dismissal of McLaughlin's individual claims without prejudice to this action. The decision of a court to abstain for reasons of judicial economy and fairness cannot be altered by the tactics of a party, unless those tactics are consistent with broader concerns of judicial economy and fairness. In April there will be another costly and lengthy trial between one of McLaughlin's wholly owned companies and UVB. Yet, McLaughlin's individual claims, which arise out of the same facts, will not be tried. Thus, McLaughlin continues his tactic of conducting litigation in piecemeal fashion. Although that tactic may benefit the parties, the court finds it contrary to "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.[6]

### Order In Which Concurrent Forums Obtain Jurisdiction

Although the order in which concurrent forums obtain jurisdiction may be an important fact in determining the propriety of abstention, as the Supreme Court made clear in *Moses H. Cone*, "priorities should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." 460 U.S. at 21, 103 S.Ct. at 930. Nevertheless, not only was McLaugh-

lin's individual case in Buchanan County filed before this case was filed, but when the court stayed this case in March of 1988, the trial of the consolidated Buchanan County action was less than three weeks away. That action was tried as scheduled, and it is only because of the May 13, 1988, agreement of the parties that this controversy remains.

The Cardinal case, which is set for trial in April of this year, was also filed before this case and was also tried in the consolidated civil action in Buchanan County. Four weeks into the trial, however, McLaughlin nonsuited the Cardinal case in Buchanan County and has refiled it there. McLaughlin should have consolidated his individual Halifax County case with the refiled Cardinal case. Instead, he nonsuited his individual claims in the Halifax County case.

In contrast with McLaughlin's other cases, this case has remained essentially dormant since it was stayed with the exceptions of a deposition that the court permitted to preserve testimony and of a flurry of activity that followed the court's inquiry concerning the case. Thus, the stay of March 23, 1988, was intended to accomplish the most expeditious and economical resolution of the controversy between McLaughlin and UVB considering the relative progress of the cases. But even if the court was writing on a clean slate and was considering the propriety of abstention for the first time, judicial economy and fairness still would be served under the circumstances by requiring McLaughlin to try his individual case with the Cardinal case

*see Interstate Material*, 847 F.2d at 1288 (quoting *Calvert Fire Ins. Co. v. American Mut. Reins. Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979)); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir.1985).

McLaughlin's federal court claims and Cardinal's pending claims in Buchanan County, as well as the pending Halifax County claims, arise from the same set of facts. Cardinal alleges three legal theories of recovery in its Buchanan County suit. McLaughlin has alleged all three theories in this suit. Additionally, in the Halifax County lawsuit, several of McLaughlin's companies allege breach of contract—a theory McLaughlin has also raised in this suit. The court finds that McLaughlin's federal lawsuit is

"substantially similar" to Cardinal's and his other companies' pending state court litigation. *See, e.g., Nakash*, 882 F.2d at 1417.

6. Because McLaughlin's closely held corporations are Virginia corporations, the complete diversity rule would preclude joinder in this action making the state court forum the most efficient forum for the resolution of the entire controversy. But that factor can be assigned little weight in determining the propriety of abstention and would clearly be an insufficient basis standing alone. Otherwise, the court would be creating a broad exception to its obligation to exercise diversity jurisdiction conferred by Congress.

that is set for trial in April. The court, however, is not writing on a clean slate, and the court does not decide whether the existence of the current Buchanan County proceeding, standing alone, would be a sufficient basis for abstention. The court simply finds that the progress of the various state proceedings favors and has favored abstention.

### Rule of Decision

There are no federal claims or defenses involved in this diversity action. The court recognizes that although "the presence of federal-law issues must always be a major consideration weighing against [the] surrender [of jurisdiction]," only in "rare circumstances" does the presence of state-law issues "weigh in favor of that surrender...." *Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. at 942. The court, however, does not find "rare circumstances," such as the presence of complex or unsettled state-law questions, weighing in favor of abstention. *American Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir.1990). The court simply finds that this factor does not counsel against abstention, because the rule of decision is not dependent upon federal law.

### Adequacy of State Court Proceedings

As state law supplies the rule of decision, it follows that there is no question concerning the adequacy of state proceedings. In *Moses H. Cone*, the Supreme Court found that resort to a North Carolina state court to enforce a federal right of arbitration was inadequate, because there was "substantial room for doubt" as to whether plaintiff "could obtain from the state court an order compelling the [defendant] to arbitrate." 460 U.S. at 26–27, 103 S.Ct. at 942. No such concerns arise here.

### "Reactive" Litigation

"[T]he vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to de-

fer to parallel state litigation under *Colorado River*...." *Moses H. Cone*, 460 U.S. at 18 n. 20, 103 S.Ct. at 937 n. 20. Clearly, this is "reactive" litigation. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 15 (1st Cir.1990); *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir.1985). It was filed in response to unfavorable rulings or problems incurred in state court. In the words of McLaughlin's counsel:

> I had looked at what had gone on in Buchanan County, and I had seen the basis upon which [the judge] ruled, and I felt like I didn't want to go back into Buchanan County and try to cause him to understand that we were putting on a separate and distinct kind of case.

Transcript of 10/10/90 Hearing at 22.

### IV

Congress has invested the court with diversity jurisdiction and unless or "until congress decides to alter or eliminate the diversity jurisdiction we are not free to treat the diversity litigant as a second-class litigant...." *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982). But as *Colorado River* recognizes, exceptional circumstances arise in which a court's refusal to hear a controversy is not an abrogation of responsibility but an exercise of responsibility. *See Lumen*, 780 F.2d at 694. All courts, state and federal, have responsibilities extending beyond the narrow interests of the parties before them. Courts must efficiently allocate limited judicial resources without adversely impacting the substantial rights of the parties. Courts must guard against practices that are contrary to the orderly administration of justice, no matter how well intentioned.[7] When this case was first stayed in March of 1988, no less than nine lawsuits had been filed between UVB and McLaughlin or his companies arising out of the same basic facts and the trial of the consolidated civil action was only three weeks away. That reason together with the other reasons set forth above created "exceptional

---

7. The court in no manner implies that either counsel acted unethically. Rather, the court finds that the tactics employed in counsels' con-

scientious pursuit of their clients' respective interests must give way to the broader concerns expressed in this opinion.

**382**

circumstances" justifying the stay. The stay could not be circumvented by agreement of the parties anymore than the court's concerns could be alleviated by McLaughlin's tactic of rushing to the Halifax County courthouse to nonsuit parallel proceedings. Despite that nonsuit, another complicated, costly trial arising out of the same facts remains scheduled in the Circuit Court of Buchanan County in April of this year.

In *Moses H. Cone*, the court did not have "to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel state-court suit." 460 U.S. at 28, 103 S.Ct. at 943. While there is considerable disagreement in the courts as to when dismissal rather than a stay is proper, the court will dismiss the case, because under the circumstances future events will not result in the exercise of jurisdiction over the controversy.

For the reasons stated above, this action will be dismissed without prejudice to the merits of any claim or defense asserted.

### FINAL ORDER

In accordance with the court's memorandum opinion entered on this date, it is ORDERED and ADJUDGED that the court will abstain from taking any further action in this case and will dismiss this case from the docket pursuant to the doctrine announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and it is further ORDERED and ADJUDGED that the proceedings styled *McLaughlin v. Crestar Bank*, Civil Action Number 90-0091-A, be consolidated herewith in the event of appeal, and this case is ORDERED stricken from the docket of the court.