Madelyn M. HUFFMIRE,
et al., Plaintiffs,

v.

THE TOWN OF BOOTHBAY,
et al., Defendants.

No. CIV. 98–264–P–C.

United States District Court,
D. Maine.

Jan. 7, 1999.

124

Madelyn M. Huffmire (Pro Se), Mansfield Center, CT.

Donald W. Huffmire (Pro Se), Mansfield Center, CT.

Sally J. Daggett, Jensen, Baird, Gardner & Henry, Portland, ME, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

The Court issued an order *sua sponte* requesting the parties to file written memoranda regarding the Court's jurisdiction over the subject matter of this case. The Plaintiffs, Madelyn and George Huffmire, ("the Huffmires") in this action assert that the Court has both diversity and federal question jurisdiction. The Defendants (referred to collectively as "Boothbay") disagree that the Court has either diversity or federal question jurisdiction. In addition, Boothbay asserts that even if the Court has jurisdiction over the subject matter, the Court should nevertheless dismiss or stay the action because an identical state-court action is currently pending between these parties.

## I. BACKGROUND

The Huffmires are retired professors from the University of Connecticut who live in the state of Connecticut. Amended Complaint ¶ 1 (Docket No. 13). The couple are also artists and, in 1984, they purchased a shore front home on Shore Road in Boothbay Harbor, Maine in which they planned to live upon their retirement. *Id.* ¶¶ 1, 2, 3. This property is located in the Shoreland Protection District pursuant to Boothbay's Zoning and Building Code Ordinance. Defendant's Answer to Amended Complaint ¶ 3 (Docket No. 16). On May 28, 1997, the Huffmires applied for a Home Occupation Permit ("the Permit") that would permit them to display their artwork for sale in an enclosed porch at their Boothbay home. Amended Complaint ¶ 4. The Huffmires' application was denied by the Planning Board for the town of Boothbay on June 19, 1997. Amended Complaint ¶ 5; Defendants' Answer to Amended Complaint ¶ 5.

The Huffmires, represented by counsel, reapplied for a Permit on March 5, 1998. Amended Complaint ¶ 6. The application was disapproved a second time on April 21, 1998, by the Planning Board. Amended Complaint ¶ 8. The Huffmires appealed and submitted additional information to the Board of Appeals including a study performed by a traffic safety engineer that allegedly demonstrated that backing out onto Shore Road from the Huffmires' residence would not create a safety hazard. Amended Complaint ¶¶ 9, 11. The Board of Appeals upheld the Planning Board's decision to deny the Huffmires' Permit application. Amended Complaint ¶ 9. The Huffmires allege that they were not permitted to cross-examine persons who testified at the hearing, that the members of the Board of Appeals had a conflict of interest, and that the members of the Board of Appeals held executive sessions from which the public was excluded in violation of Maine law. Amended Complaint ¶ 17. The Huffmires filed identical lawsuits against Boothbay in state superior court and this Court on July 17, 1998. The Complaint (Docket No. 1); Defendants' Response to this Court's Order Regarding Subject Matter Jurisdiction ("Defendants' Response"), Exhibit 1, State Court Complaint (Docket No. 18).

## II. ANALYSIS

### A. Subject Matter Jurisdiction.

The threshold issue is whether the Court has jurisdiction over the subject matter of this case. The Huffmires assert that this Court has diversity jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331. Boothbay disagrees. The Court agrees with the Huff-

mires that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Pursuant to diversity jurisdiction, a federal court has jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.[1] *See* 28 U.S.C. § 1332. Boothbay contends that the matter in controversy does not exceed $75,000 as required by the statute.

█ In *St. Paul Mercury Indem. Co.,* the Supreme Court established the standard for determining whether the requisite jurisdictional amount has been properly alleged:

> [T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show any bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed … the suit will be dismissed.

*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). If the object of the litigation is to be free of certain regulation, the amount in controversy for purposes of diversity jurisdiction is the loss that would follow enforcement of that regulation. *See McNutt v. Gen. Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 181, 56 S.Ct. 780, 781, 80 L.Ed. 1135 (1936). Here, enforcement of the Board's[2] decision to deny the Huffmires' Permit application results in the loss of their ability to display and sell their artwork in their home. The amount in controversy is, thus, the value of the right to use their home to display and sell their artwork and any other consequential losses as a result of the denial of the Permit application.

In their Amended Complaint, the Huffmires allege that "the amount in controversy exceeds the jurisdictional threshold." Amended Complaint ¶ 18. From the face of the Amended Complaint, however, it appears to a legal certainty that the value of the right to display and sell their artwork did not exceed $75,000. Accordingly, the Court ordered the parties to address the issue of jurisdiction ("the Order") (Docket No. 14).

█ Upon a challenge that the amount in controversy does not meet the statutory minimum, a plaintiff has the "burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Dep't of Recreation and Sports of Puerto Rico v. World Boxing Ass'n.,* 942 F.2d 84, 88 (1st Cir.1991); *see also Hardemon v. City of Boston,* 144 F.3d 24, 26–27 (1st Cir.1998). A plaintiff may meet this burden by amending the pleadings or by submitting sworn affidavits. *Dep't of Recreation and Sports of Puerto Rico,* 942 F.2d at 88. In their initial response to the Court's Order, the Huffmires alleged in their unsworn memorandum that, "the amount in controversy exceeds $75,000 based on rental of equal space annually in the town of Boothbay Harbor over the lifetimes of the plaintiffs and their heirs, who also have artistic training and will eventually reside in the home." Plaintiffs' Response to Order Regarding Subject Matter Jurisdiction ("Plaintiffs' Response") at 4. This is clearly not sufficient on its own to show that it is not a legal certainty that the value of the right to display and sell their artwork does not exceed $75,000. The price of rental space in Boothbay is not supplied nor substantiated, leaving the Court unable to determine whether the amount in controversy will not be met to a legal certainty.

█ In their reply to Boothbay's response to their initial memoranda, the Huffmires further explain that the amount in controversy is the cost of an alternate site that they will be forced to rent if they fail to acquire a Permit that allows them to show and sell art

---

**1.** It is uncontested that the Huffmires and Boothbay satisfy the requirement that the parties be of diverse citizenship.

**2.** "The Board" refers collectively to Boothbay's Planning Board and Board of Appeals.

in their own home. Plaintiffs' Reply (Docket No. 19) at 2. The Huffmires wisely do not restate their argument regarding their artistically inclined heirs. Rather, the Huffmires submit a sworn affidavit wherein they aver that, to their personal knowledge, the rental price of an alternate site for sale of art work in Boothbay varies from $12,000 per year for off-the-street space to $30,000 per year for a prime location on the first floor of Commercial Street.[3] Plaintiffs' Reply at 8. They contend that the statutory amount shall, therefore, be met within five years.

The Court is satisfied that the Huffmires have set forth substantiated facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount. Thus, the Huffmires have succeeded in showing that they can meet the subject matter jurisdictional requirements of diversity of citizenship jurisdiction as to the applicable jurisdictional amount in controversy. Accordingly, because the parties are diverse and it is not clear to a legal certainty that the amount in controversy does not exceed $75,000, this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332, and it is unnecessary to determine whether the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## B. Abstention

 Having determined that the Court has subject matter jurisdiction to hear the matter pursuant to 28 U.S.C. § 1332, the Court next must address Boothbay's argument that this Court, nonetheless, should abstain from deciding this case. Boothbay argues that the Court should dismiss, or at least stay, the federal action pending resolution of the parallel state-court action under the doctrine articulated by the Supreme

Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Court disagrees that the *Colorado River* factors warrant abstention in this case, but determines that it shall abstain from hearing the Huffmires' claims requesting a review of the Board's decision to deny their Permit application under the abstention doctrine established by the Supreme Court in its decision in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[4]

### 1. *Colorado River* Abstention.

 Boothbay contends that the Court should stay or dismiss the action in the interest of judicial efficiency because the Huffmires have filed an identical suit in state superior court. In considering whether it should dismiss or stay this action, the Court begins with the axiom that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction ....'" *Id.* (citing *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). "It follows from this postulate that when a state court and a federal court enjoy concurrent jurisdiction over a particular suit, they both may, and under some circumstances, must, proceed with the respective litigations simultaneously." *Burns v. Watler*, 931 F.2d 140, 145 (1st Cir.1991). In some "exceptional circumstances," however, wise judicial administration permits the stay or dismissal of a federal suit due to the presence of a concurrent parallel state court proceeding. *See*

---

3. The Court notes that the Huffmires should have submitted the affidavit in response to the Court's Order rather than waiting to attach it to its reply. However, the Huffmires are *pro se* litigants and their papers will be held to less stringent standards than those drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

4. There are two additional sets of circumstances under which a federal court may abstain from exercising its jurisdiction recognized by the Supreme Court that do not apply here: 1) a federal

court should abstain where resolution of an unsettled state law question would render unnecessary the need to decide a federal constitutional question, *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and 2) a federal court should abstain where, absent bad faith, harassment, or a clearly invalid state statute, federal jurisdiction is sought to be invoked to restrain state criminal proceedings, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47.

The narrow exception to the rule favoring the exercise of jurisdiction exists to preserve the principle of wise judicial administration. The Supreme Court in *Colorado River* and its progeny identified several factors that a federal court may consider when deciding whether "exceptional circumstances" justify a stay or dismissal of federal proceedings when a state proceeding involving the same issues is also underway. They are the following:

> 1) whether either court has assumed jurisdiction over a *res;* 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which the forums obtained jurisdiction; 5) whether federal law or state law controls; and 6) whether the state forum will adequately protect the interests of the parties.

*Colorado River,* 424 U.S. at 817–21, 96 S.Ct. at 1246–48; *Moses H. Cone Mem'l Hospital v. Mercury Constr. Co.,* 460 U.S. 1, 15–25, 103 S.Ct. 927, 936–42, 74 L.Ed.2d 765; *Burns,* 931 F.2d at 146. The First Circuit Court of Appeals has added an additional factor related to the order in which the forums obtained jurisdiction that merits consideration, notably the vexatious or contrived nature of the federal action. *See Burns,* 931 F.2d at 146. When a court considers whether it should stay or dismiss a parallel federal proceeding, no one factor is necessarily determinative, and a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against the exercise of jurisdiction is required. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 12 (1st Cir.1990) (citing *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1247). To determine whether the present case presents the narrow exception to the Court's duty to exercise its jurisdiction, it is necessary to weigh the foregoing factors.

Boothbay concedes that the first two factors do not weigh either in favor of or against staying or dismissing the federal action because neither the state nor the federal court has assumed jurisdiction over property subject to the lawsuit and there is no evidence that the federal forum is less convenient to the parties than is the state forum. Defendants' Response at 8. The third factor requires the Court to consider whether a decision to hear the duplicative proceeding in federal court will result in piecemeal litigation. *See Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247. In considering whether the concern for avoiding piecemeal litigation weighs against the exercise of jurisdiction, "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some *exceptional basis* for requiring the case to proceed entirely in the [state] court." *Burns,* 931 F.2d at 146 (citing *Villa Marina Yacht Sales, Inc.,* 915 F.2d at 16) (emphasis added). Only where piecemeal adjudication gives rise to harsh, contradictory, unfair consequences, is piecemeal adjudication "exceptional" and weighs in favor of a stay or dismissal of federal proceedings. *See Id.*

Generally, inconsistent rulings by state and federal courts will not present unfair contradiction in the same case because a decision issued in one court will bind the other court under the doctrine of *res judicata.* Without indicating what issues in the case it refers to, Boothbay argues that inconsistent rulings may result because some of the questions presented by the instant case may be resolved by pretrial and prejudgment orders well before trial. Defendants' Response at 8–9. It is true that preliminary decisions would not be binding on subsequent determinations of the same issues in the other forum and, thus, there is a danger that inconsistencies may result as to prejudgment rulings. This is true, however, of all situations where state and federal proceedings coexist and, therefore, this alone is not enough for this factor to weigh in favor of this Court's decline of its jurisdiction. *See Villa Marina Yacht Sales, Inc.,* 915 F.2d at 16 (holding that "[d]ismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues."). Because Boothbay has not presented to the Court a particular

prejudgment ruling that, if resolved inconsistently by the forums, would result in harsh or unfair consequences, this factor does not carry weight in the decision regarding abstention in the present case.

Of additional consideration is the fact that, in *Moses H. Cone Mem'l Hospital* and *Colorado River*, where the Supreme Court found that the avoidance of piecemeal litigation *was* an influential factor weighing in favor of a federal court's decision to abstain, the Court relied heavily on the policies regarding piecemeal litigation embodied in the federal statutes under which the claims arose. *See Moses H. Cone Mem'l Hospital*, 460 U.S. at 20, 103 S.Ct. at 939 (The Arbitration Act); *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247 (The McCarran Amendement). Here, no federal policy in favor of the avoidance of piecemeal litigation is at stake. Thus, the Court finds no "harsh, contradictory, or unfair consequences" that would result from litigating identical suits in two separate forums arising from the denial by the Board of the Huffmires' application for their Permit. Consequently, the piecemeal litigation factor does not weigh in favor of the Court relinquishing its jurisdiction.

The fourth factor requires the Court to consider the order in which the forums obtained jurisdiction. This factor has been further refined by the Supreme Court to require a court to examine the progress made in the federal forum at the time the district court is determining whether or not to abstain. *See Moses H. Cone Mem'l Hospital*, 460 U.S. at 21–22, 103 S.Ct. at 939–40; *Colo-*

*rado River*, 424 U.S. at 818–19, 96 S.Ct. at 1247–48 (considering the apparent absence of any proceedings in the district court, other than the filing of the complaint prior to the motion to dismiss). If substantial proceedings have taken place at the time of the decision to stay or dismiss the federal action, this factor counsels in favor of deciding the case. *Moses H. Cone Mem'l Hospital*, 460 U.S. at 22, 103 S.Ct. at 940. Here, the Huffmires filed suit in state and federal court on the same day. *See* Complaint (Docket No. 1); Defendants' Response Regarding Subject Matter Jurisdiction, Exhibit 1 (state complaint). Moreover, this case has not proceeded far beyond an initiatory stage in federal court.[5] The Court is also not persuaded that either action has progressed significantly beyond the other. Identical motions have been filed in both actions, and this Court has not as of yet ruled on any substantive motions. Because the action in federal court has not proceeded substantially, nor has it proceeded further than the action filed in state court, this factor does not weigh against this Court staying or dismissing these proceedings.

In regard to the order in which the state and federal actions were filed, the Court of Appeals for the First Circuit has held that it is also appropriate to consider the related matter of the plaintiff's motivation in filing the second lawsuit. *See Burns*, 931 F.2d at 146; *Villa Marina Yacht Sales, Inc.*, 915 F.2d at 15 ("A related factor that could tip the balance toward dismissal is the motivation for the second lawsuit"); *see also Moses H. Cone Mem'l Hospital*, 460 U.S. at 17 n.

---

5. The Complaint was filed on July 17, 1998, (Docket No. 1) and Boothbay filed an answer on August 3, 1998, (Docket No. 2). On August 4, 1998, Magistrate Judge Cohen issued an Order to Show Cause regarding the requirement that Donald W. Huffmire's signature appear on the Complaint. (Docket No. 4). On August 17, 1998, the Huffmires filed a copy of the Complaint bearing Donald W. Huffmire's signature. (Docket No. 8). Along with its original answer, Boothbay filed a motion to dismiss defendant George Horn, Jr. from the Complaint because, other than being named in the caption, no substantive claims are brought against him in the body of the Complaint. (Docket No. 3). On August 17, the Huffmires filed an Amended Complaint that removed George Horn, Jr.'s name from the caption of the Complaint. (Docket Nos. 13), and on September

17, 1998, Boothbay filed an Answer to the Amended Complaint (Docket No. 16). Magistrate Judge Cohen issued a Scheduling Order on August 4, 1998, (Docket No. 5). According to the Scheduling Order, discovery was completed in the federal action on November 24, 1998. As of October 7, 1998, neither party had begun discovery. *See* Defendant's Response at 9.

In addition, the Huffmires have filed a motion for a trial *de novo* (Docket No. 6, 11), and a Motion for a More Definite Statement (Docket No. 9). Boothbay has filed responses to these motions, (Docket Nos. 7, 10), and the Huffmires have filed replies (Docket Nos. 12, 15). The Court has not ruled on either of the these motions. The Huffmires have filed the same motions in state court. *See* Defendant's Response, Exhibit B.

20, 103 S.Ct. at 937 n. 20 (noting with approval the lower court's consideration of a plaintiff's motive in filing the second suit but finding it not necessary to consider on appeal); *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir.1991) (holding that the filing of a second lawsuit by the same plaintiff may be examined by the federal court in light of the motivation of the plaintiff in filing the second suit); *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309–10 (1st Cir.1986). The vexatious or reactive nature of either the federal or state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River. See id.*

Boothbay argues that the Huffmires filed the exact same case in state and federal courts with the intention to increase Boothbay's attorneys' fees and ultimately to give the Huffmires the advantage of pursuing more aggressively the action in the forum that is more favorable to their claims. Defendants' Response at 9. Here, the state and federal suits are identical and were filed on the same day. This is, thus, not a clear example of reactive litigation such as where a plaintiff responds with a federal filing in response to an adverse ruling in state court. *See Gonzalez*, 926 F.2d at 4. Furthermore, nothing in the record suggests that the Huffmires' action was taken in bad faith as Boothbay suggests. Accordingly, this factor, especially in light of this Court's duty to exercise its jurisdiction, weighs in favor of deciding not to abstain.

Even absent bad faith or evidence of a vexatious motive, appellate courts faced with the question of whether the district court should abstain in a second lawsuit filed in federal court, identical to one filed by the same plaintiff in state court, have considered this circumstance relevant in upholding district court decisions to dismiss the federal case. *Villa Marina Yacht Sales, Inc.*, 915 F.2d at 14 (citing cases). The reasoning behind giving weight to the fact that an identical suit is filed by a plaintiff in federal court is based on removal principles. In *American Int'l Underwriters*, the Court of Appeals for the Ninth Circuit concluded that plaintiffs should not be allowed to refile their complaints in federal courts. The court not-

ed that the right to remove a state court case to federal court is limited to defendants under 28 U.S.C. § 1441, and it stated that removal principles seemed applicable in this context because the filing of a repetitive lawsuit had the same effect as if the plaintiff had actually removed the original suit. *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1260–61 (9th Cir.1988). Here, the Huffmires filed identical lawsuits in state and federal court, thus undermining the premise behind the policy of restricting removal to federal court to defendants and that plaintiffs are required to abide by their selection of a forum. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Consequently, although not a dispositive factor standing alone, this factor weighs in favor of staying or dismissing the federal action because it is the plaintiff who filed both a state and a federal suit, thereby contravening the principles behind the removal statute.

The Court must next consider the fifth factor—whether federal law or state law controls. It is difficult to glean from the Amended Complaint the exact claims that the Huffmires have alleged in this action. After an initial cursory examination, it appears that the Huffmires' claims are no more than a request for review of the Board's decision to deny the Permit application and the manner in which the administrative proceedings were conducted. The Huffmires complain that the Board's actions were arbitrary and capricious, that it failed to consider evidence supplied by them for the Board's consideration, and that it incorrectly applied Boothbay's zoning ordinance. *See* Amended Complaint, Count 1 ¶¶ 1–4, Count II ¶¶ 2, 6. As to relief, the Huffmires request judgment in their favor for the Permit allowing them to display and sell art in their home, compensatory damages, interest, and costs. Amended Complaint at 9. After a careful study of the Amended Complaint, however, the Court can reasonably conclude that the Huffmires raise a state law claim, pursuant to 30–A M.R.S.A. § 2691, for appellate review of the Board's decision denying their Permit application

(Count II) [6] and in addition, raise the following federal constitutional claims: that the manner in which the Board conducted the administrative hearing violated the Huffmires' right to due process and equal protection under the Fourteenth Amendment of the federal constitution (Counts I, III), that the denial of the Permit application constituted an unconstitutional taking of property under the Fifth and Fourteenth Amendments of the federal constitution (Count V), that the zoning ordinance applied to the Huffmires' Permit application is unconstitutional on its face (Count I), and that 30–A M.R.S.A § 2691(3)(G) is unconstitutional as applied in this case because it denies them a jury trial of their constitutional claims (Count IV). Hence, the Huffmires raise claims which arise under both state and federal law in this action.

The Supreme Court has written that, although the presence of state law issues may weigh in favor of the surrender of the Court's jurisdiction, the presence of federal law issues must always be a major consideration weighing against the surrender of jurisdiction. *See Moses H. Cone Mem'l Hospital,* 460 U.S. at 26, 103 S.Ct. at 942. The Supreme Court has also held that when the state court has concurrent jurisdiction over the federal constitutional claims, the source-of-law factor has less significance. *See id.* at 25, 103 S.Ct. at 942.

The Court of Appeals for the First Circuit has further cautioned that only in rare circumstances will the presence of state law issues weigh in favor of the surrender of jurisdiction. *See Villa Marina Yacht Sales, Inc.,* 915 F.2d at 15. Such rare circumstances exist "only when a case presents 'complex questions of state law that would best be resolved by a state court.' " *Id.* The questions of whether the zoning ordinance and 30–A M.R.S.A. § 2691(3)(G) are constitutional are not complex. Whether a state law or procedure is constitutional can be resolved as effectively in federal court as in state court. Abstention in cases based on this factor where state law questions are unam-

biguous is, thus, impermissible because it "would convert abstention from an exception into a general rule." *Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero,* 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976). As to these claims, the source of law factor does not counsel in favor of abstention. The claim requesting regulatory review of the administrative decision to deny the Huffmires' Permit application, however, *can* be resolved more effectively in state court because of the particular administrative review procedures available under Maine law. This circumstance is, however, more appropriately discussed in terms of *Burford* abstention principles.

Finally, the sixth factor requires the Court to examine whether the state forum will adequately protect the interest of the parties. With respect to whether the state forum will adequately protect the Huffmires' interests, it is clear that as to the federal constitutional claims, both the state and federal forums will adequately protect the interests of the parties. In regard to the claim requesting regulatory review of the administrative decision to deny the Huffmires' Permit application, however, the state court will more adequately protect the parties' interests. As discussed below in the section of this opinion discussing *Burford* abstention, a review procedure for state administrative determinations exists under state law. *See* 30–A M.R.S.A. § 2691. The state court review includes an option for an independent determination of facts regarding the reasonableness of the Board's decision. *See* 30–A M.R.S.A. § 2691; M.R. Civ. P. 80B(d). There does not exist a federal analog to this procedure. The Huffmires filed their Complaint in state court according to Rule 80B of Maine's rules of civil procedure. Therefore, state court will more adequately protect the parties' interests in regard to the claim requesting administrative review of the Board's decision.

To conclude, the *Colorado River* factors do not warrant a decision to abstain from hearing this case. The first two factors are not

---

6. The Huffmires subsequently filed a motion for a trial *de novo* of the facts and offered a statement of proof in both state and federal actions. They filed the motion in state court pursuant to Maine R. Civ. P. 80B. They did not cite legal authority for the motion in federal court.

material in regard to a decision whether or not to abstain in this case. Third, there is no risk that a decision not to abstain would result in piecemeal litigation that would result in harsh or unfair consequences to the parties. Fourth, there is no evidence that the federal litigation is vexatious or contrived. Furthermore, although the sequence in which the forums obtained jurisdiction runs counter to the principles embodied in the doctrine of removal and the federal proceeding has not progressed beyond an initiatory phase, this is not sufficient, when weighed against the Court's unflagging obligation to exercise its jurisdiction, to support a decision to abstain in this action. As to the fifth and sixth factors, federal and state law issues are raised in this case over which the forums have concurrent jurisdiction. The existence of the federal constitutional questions weighs heavily in favor of the federal court retaining its jurisdiction. Furthermore, both the state and federal courts can adequately protect the parties' interests in regard to these claims. Considering the "unflagging obligation" to exercise jurisdiction and the Huffmires' right to have the tribunals with jurisdiction entertain their claims, the Court will not stay or dismiss the present case in its entirety under the *Colorado River* doctrine. As to the claim requesting a deferential review of the Board's decision, however, the fifth and sixth factors under *Colorado River* counsel in favor of abstention. A decision to abstain from deciding this claim, however, is more appropriately based on the doctrine of *Burford* abstention.

## 2. *Burford* Abstention.

▮▮▮▮ Abstention is appropriate under the *Burford* doctrine as to the Huffmires' request for a review of the Board's denial of their Permit application. Under the *Burford* doctrine, a federal court may decline to exercise its jurisdiction where "the state has a unified scheme for review of its administrative orders and federal intervention in cases in which diversity is present would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial public concern." 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Pro-*

*cedure* 485 (1978); *Burford,* 319 U.S. at 315, 63 S.Ct. at 1098. Pursuant to this doctrine, "[a] federal court, by abstaining, may avoid the awkward circumstance of turning the federal court into a forum that will effectively decide a host of detailed state regulatory matters, to the point where the presence of the federal court, as a regulatory decision-making center, makes it significantly more difficult for the state to operate its regulatory system." *Bath Mem'l Hospital v. Maine Health Care Finance Comm'n,* 853 F.2d 1007, 1012 (1st Cir.1988). After the Supreme Court's decision in *New Orleans Public Service, Inc.* construed by the Court of Appeals for the First Circuit to limit the circumstances under which *Burford* abstention is proper, abstention pursuant to this doctrine is only appropriate where federal decision-making demands "significant familiarity with ... distinctively local regulatory facts or policies." *Fragoso v. Lopez,* 991 F.2d 878, 884 (1st Cir.1993) (quoting *New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 363–64, 109 S.Ct. 2506, 2515–16, 105 L.Ed.2d 298 (1989)).

▮▮▮▮ Abstention is appropriate under the *Burford* doctrine when there is a threat to the proper administration of a constitutional state regulatory system. *See Bath Mem'l Hospital,* 853 F.2d at 1013. Specifically, the threat avoided by a decision to abstain is that a federal court might, in the context of the state regulatory scheme, create a parallel, additional, federal regulatory review mechanism, the existence of which would significantly increase the difficulty of administering the state regulatory scheme. *See id.* Were the Court to review the Board's decision to deny the Huffmires' Permit application, it would create a parallel additional federal regulatory review mechanism.

The present action requires a deferential on-the-record review of the decision to deny the Huffmires' Permit application and the administrative proceedings conducted by the Board that resulted in the denial. Maine law provides a mechanism for state court review of decisions made by administrative agencies such as the Board in this case. Under Maine

law, a plaintiff seeking review of an adverse administrative decision may take appeal to state superior court in accordance with Rule 80B of the Maine rules of civil procedure. *See* 30–A M.R.S.A. § 2691. Rule 80B provides the mode of review of an action taken by a governmental agency including a zoning board and pursuant to the rule, a party appealing an adverse decision may request a trial of the facts. *See* M.R. Civ. P. 80B(d). The Huffmires filed their Complaint in superior court pursuant to Rule 80B and have, thus, triggered the administrative review procedures afforded under state law. The superior court functions as an intermediate appellate court undertaking judicial review of an administrative record, *see Your Home, Inc. v. City of Portland,* 501 A.2d 1300, 1302 (Me.1985), and determines only whether the decision of the Board was unlawful, arbitrary, capricious, or unreasonable. *See Penobscot Area Housing Dev. Corp. v. City of Brewer,* 434 A.2d 14, 21 (Me.1981). By providing this review mechanism, the state has signaled its interest in regulatory coherency by providing a limited review of administrative decisions in superior court. A parallel federal proceeding conducting a review of the administrative decision could "in a very real sense ... disrupt the regulatory scheme." *See Armistead v. C & M Transport, Inc.,* 49 F.3d 43, 48 n. 4 (1st Cir.1995) (noting that where "[t]he state has signaled its interest in regulatory coherency by concentrating all claims in an exclusive administrative process," parallel federal suits could disrupt the regulatory scheme) (citing cases). Review in this Court would result in a duplicative federal regulatory review proceeding when one is available and has been requested under the state's regulatory review scheme in state court. Review would, thus, interfere with the state's procedures and policies in respect to review of administrative zoning decisions. By abstaining from deciding this claim, the Court will avoid disrupting the state's unified scheme for the review of zoning decisions.

Furthermore, zoning decisions are of local concern and involve the resolution of an issue governed primarily by local factors, with which state agencies and courts have greater expertise. Accordingly, the federal court's decision in this case as to whether or not the Board correctly denied, under Maine substantive law, the Huffmires' Permit application demands familiarity with distinctively local regulatory facts and policies. *See Fragoso,* 991 F.2d at 884. By abstaining from hearing this claim and letting the state court conduct the on-the-record deferential review of the Board's administrative decision to deny the Huffmires' Permit application, the Court is avoiding the creation of a parallel, additional federal regulatory review mechanism in an area of local concern.

An additional consideration counseling in favor of abstaining in regard to this claim requesting review of the Board's decision, is the role that the Court would be playing in such a review. By conducting a deferential review of the Board's decision, the Court will be acting as an appellate court. Although a federal court has supplemental jurisdiction to hear such state claims when they are raised alongside federal constitutional claims, as in this case, *see City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 529–32, 139 L.Ed.2d 525 (1997), the Court of Appeals for the First Circuit has indicated that it is wise to abstain from hearing the claims because they require the court to conduct an appellate review. *See Armistead,* 49 F.3d at 47. As a court of original jurisdiction, a federal court does not have appellate power over original proceedings in a state's administrative tribunals. *See id.* The limited appellate authority exercised by the state superior court under Maine law over state administrative proceedings in the present case has no analog in a federal district court. Accordingly, this consideration counsels in favor of a decision to abstain.

Accordingly, the Court shall abstain from hearing the claim requesting a deferential review of the administrative proceeding below. The administrative review of the Board's decision and the trial of the facts requested by the Huffmires according to Rule 80B of Maine's rules of civil procedure, if granted by the superior court, shall be conducted in state superior court in accordance with Maine law.

 The Court, however, will not abstain from hearing the other claims raised in this case. Abstention under the *Burford*

doctrine is not appropriate simply because there is a threat that the federal court's decision may result in a state law or system being found unconstitutional. *See Bath Mem'l Hospital,* 853 F.2d at 1013 (The threatened interference sought to be avoided under the *Burford* doctrine "does not consist merely of the threat that the federal court might declare [the state law or system] unconstitutional."). A case considering the question of whether a state regulatory system or law is constitutional in the first instance does not, therefore, present a situation where *Burford* abstention is appropriate.

The remaining claims in this case require the Court to pass on the constitutionality of two state laws (the Boothbay zoning ordinance and the state administrative review statute, 30-A M.R.S.A. § 2691), *the procedural manner* in which the administrative procedures were conducted, and whether the denial of the Permit application constituted an unconstitutional taking. These claims do not require individualized review of fact-specific regulatory decision-making. To the contrary, they attack the statutes as they are written and as they were applied to the

7. The court notes that its decision to stay this aspect of the case is consistent with a recent opinion issued by the Court of Appeals for the First Circuit staying further proceedings pursuant to the primary jurisdiction doctrine until a federal agency ruled on the underlying issues. *See American Automobile Mfrs. Assoc. v. Massachusetts Dep't of Envtl. Protection,* 163 F.3d 74, 81 (1st Cir.1998). The primary jurisdiction doctrine is a doctrine specifically applicable to claims properly cognizable in a court that require resolution of some issue within the special competence of an administrative agency. *See id.* (citing *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)). The following factors are identified by the Court of Appeals for the First Circuit in *American Automobile Mfrs. Assoc.* to guide the decision as to whether or not to defer a matter to an agency determination under the primary jurisdiction doctrine, especially when the matter involves questions of fact: 1) whether the agency determination lies at the heart of the task assigned the agency by Congress; 2) whether agency expertise is required to unravel intricate, technical facts; and 3) whether, though perhaps not determinative, the agency determination would materially aid the court. *Id.* at 81 (citing *Commonwealth of Massachusetts v. Blackstone Valley Elec. Co.,* 67 F.3d 981, 992 (1st Cir.1995)).

Here, the Court has decided to abstain from hearing the Huffmires' claims requiring under

Huffmires' application for a Permit. *See Bath Mem'l Hospital,* 853 F.2d at 1014. As the Court of Appeals for the First Circuit has clarified, "that sort of risk is present whenever one attacks a state law on constitutional grounds in a federal court." *Id.* at 1013 (citing *Zablocki v. Redhail,* 434 U.S. 374, 379–80 n. 5, 98 S.Ct. 673 n. 5, 54 L.Ed.2d 618 (1978) (holding "[t]here is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy.")). It is not appropriate, therefore, for the Court to abstain from deciding the federal constitutional questions raised in this case. However, the Court will stay the federal proceedings pending the state court's deferential review of the Board's decision to deny the Huffmires' Permit application. The Court will hear the constitutional questions, if they remain viable, after the state concludes its review of the Board's decision to deny the Huffmires' Permit application.[7]

### III. CONCLUSION

Accordingly, the Court will *ABSTAIN* from hearing Count I in so far as it requests

state law a deferential review of the Board's denial of their Permit application. The Court will defer to the state court's review of that aspect of the administrative proceeding which is also requested by the Huffmires in their parallel state court proceeding. The state court review of the Board's decision lies at the heart of the task assigned to the state court pursuant to Maine's administrative review statute, 26 M.R.S.A. § 2691. The statute requires the superior court to conduct a deferential review of administrative hearing and decision. Furthermore, the Huffmires have requested a trial of the facts in state court pursuant to Rule 80B(d) of Maine's rules of civil procedure which, if granted, may require that court to conduct an evidentiary hearing. Finally, the state court's decision may materially aid this Court in deciding whether the Huffmires' due process and equal protection rights were violated by the Board. Thus, the question of whether the Board properly denied the Huffmires' Permit application under Maine's substantive and procedural law is in the primary jurisdiction of the state Superior Court as part of the appellate review apparatus governing zoning decisions and the state court's decision may effectively moot the Huffmires' federal constitutional claims. Thus, the decision to stay the federal proceedings pending the state court's review of the administrative agency's decision in this case is in accordance with the purposes and values upheld in *American Automobile Mfrs. Assoc.*

a review of the Board's decision to deny the Huffmires' Permit application. The Court shall *STAY* the proceedings regarding the Huffmires' remaining constitutional claims until resolution of the state court's deferential on-the-record review of the Board's decision.

**SO ORDERED.**